LEMMON, Judge.
This is a suit by Joseph P. Messina, d/b/a J. P. Messina Trucking Service, for services rendered in furnishing materials, equipment and labor in connection with the construction of an industrial plant in St. James Parish. The trial court rendered judgment in the sum of $61,391.94 against Koch Industries, Inc. (formerly Rock Island Oil & Refining Co., Inc.), the owner of the immovable property on which the plant was constructed, and Matador Chemical Co., Inc., the lessee.
The defendants appealed suspensively, primarily assigning as error the overruling of their peremptory exception that Messina performed contracting work without being licensed as required by law. They contend that since the undertaking was prohibited by law, Messina should not be permitted to recover in civil court for an undertaking which amounts to a misdemeanor. Alternatively, defendants dispute the rates used by Messina in calculating labor charges and the allowance by the trial court of interest prior to judicial demand.
On June 6, 1968 Rock Island issued a written purchase order to Messina for “Labor, equipment and material to build tank pads for Matador Chemical Company Job #5142 as requested by E. W. Fisher.” The order provided rental rates for certain equipment, wage scales for certain workmen and prices for sand and shells. It further provided that “all material and labor excluding dirt and shell will be charged at actual cost plus 10%.” Three copies of each invoice were to be rendered, one to Matador, one to Rock Island and one to the Litwin Corporation, which was the general contractor. This was the only written agreement executed by the parties.
Jimmie Walls, Messina’s superintendent, testified that standard equipment rates and non-union labor rates were set out in the purchase order with the understanding that the rates would change if it became necessary to employ union labor. When Messi-na was requested to supply labor and equipment on other phases of the construction in progress, he accordingly furnished equipment of other types and workmen of other classifications than those listed on the purchase order, which required subsequent agreements on rates. Walls stated that no equipment was rented nor labor *223 supplied without a prior agreement with Litwin supervisors as to the rates.
In addition to that used in building the tank pads, Messina furnished equipment, materials and labor to lay pipe, set pipe support, construct roads, dig an oxidation pond and perform foundation, form, dirt and grading work and in general to provide a back-up crew and equipment for all the construction firms working on the project. However, no specific contract was entered into for any particular job. On a day to day basis Pat Patterson, Lit-win’s supervisor, simply informed Walls of the amount and type of equipment and labor force which would be needed. Patterson supervised all work done by the equipment and workmen supplied by Messi-'na and signed and approved daily work tickets.
Messina rendered invoices every 15 days. Through July 15, 1968 defendants routinely paid the invoices totaling $45,114.12. For the next 15 day period Messina rendered an invoice in the amount of $57,577.94, and defendants eventually paid $56,337.39. During the next 40 days Messina submitted invoices totaling over $60,000.00. When no payment was received, Messina filed the present suit.
Defendant’s peremptory exception alleged that Messina was a contractor within the meaning of R.S. 37:2157[1] and was not licensed as required by R.S. 37:2151 — 2163.[2]
We do not agree that the work performed by Messina was prohibited by the cited statutes. We interpret Section 2157 to require a fixed price, fixed commission, fixed fee, fixed wage or fixed salary of the contractor of $30,000.00 or more, as well as a total undertaking of $30,000.00 or more. Messina did not “undertake(s), attempt (s), or submit (s) a bid” to perform any services at a fixed price of $30,000.00 or more. Although Messina eventually was paid more than $30,000.00, there was never any contract or agreement enforceable by either party which stipulated payment of that amount. All testimony clearly showed that from the first day on the job and every day thereafter, defendants were under no obligation to continue Messina’s employment, and he was under no obligation to continue furnishing equipment and labor. From day to day defendants were free to obtain equipment and labor elsewhere if a more favorable bargain could be found, and Messina was free to move his operation elsewhere if a better opportunity presented itself.
This is not the type of situation contemplated by Section 2157. We believe that the chapter is designed to insure the quality of contractors who undertake, or bid on, substantial portions of substantial construction projects.
Our view is fortified by examining the further provisions of the chapter. Section 2157 subd. A excludes residences to be oc *224 cupied by not more than four families unless the construction cost exceeds $75,000.-00, obviously to exclude most residential construction. Section 2163 prohibits an awarding authority from issuing plans or specifications to other than a licensed contractor, and if the contractor submits a bid of $30,000.00 or more, he must certify that he is licensed.
For the licensing requirement to be applicable, not only must the project be of considerable size, but also the contractor’s undertaking in the total particular project must be substantial. The fixed price requirement imposes the latter limitations.
In the present case the size of the overall project was considerable, but Messina’s undertakings were simple day to day furnishing of rented equipment and operators or other labor when and if requested. We conclude that Messina was not a contractor within the meaning of Section 2157, and the exception was properly overruled.[3]
As to the defense on the merits, a careful examination of the testimony and of the extensive exhibits reveals that the only substantial dispute is over charges for labor rates. The amount of materials delivered, the amount of hours and rates charged for equipment, and the amount of hours of labor supplied are adequately proved with uncontradicted evidence.
The first dispute over labor rates apparently arose when Messina charged a 20% fixed fee for pipe fitter’s labor on the July 31 invoice. Walls testified that the increase was approved by E. W. Fisher (Litwin’s supervisor named in the purchase order). Edwin Wilkinson, Matador’s president and defendants’ only witness, testified that he had no knowledge of the approval. When defendants paid the invoice, the additional 10% was deducted from their payment. The trial judge awarded the full amount of Messina’s claim, and we find no manifest error in this determination, since defendants by their previous actions had vested Fisher with the apparent authority to approve the labor rate. No charges for pipe fitter’s labor appeared on the subsequent invoices.
As to the remaining invoices, defendants contend that Messina’s charges for labor exceeded his “actual cost” of the labor plus the fixed fee. In effect defendants argue that “actual cost” of labor means the amount of gross wages paid to the laborers.
Prior to July 15 defendants approved and paid invoices which, in addition to charges for the gross wages paid directly to the workmen, included additional charges of 4.63% for compensation insurance, 4.4% for F.I.C.A. and 2.7% for unemployment security. These items (which exceeded 10%) are directly attributable to Messina’s employment of workmen for the specific purpose of furnishing them for the Matador job.
Messina then had an audit made to determine his actual cost (including all overhead expenses) in furnishing these workmen. Based on this audit Messina proposed new rates, which included union scale wages, travel expenses paid to the workmen, union health and welfare benefits, F.I.C.A. taxes, unemployment security payment, compensation insurance and office expenses attributable to the job. It is to the latter item that defendants most strenuously object, contending that this is an overhead item which can only be properly included in the 10% fixed fee.
Defendants paid the new rates on the July 31 invoice, but refused to pay any of the subsequent invoices.
*225 The key issue is which, if any, overhead expenses were contemplated when the term “actual cost” was used in the agreement between the parties. Stated otherwise, was the 10% fixed fee intended to be “clear” profit or to include profit and some or all overhead expenses?
Whether office expenses attributable to a job should be included in the fixed fee or in the actual cost in “cost plus” employment is not a matter of law, but rather is a matter of agreement between the parties. The extent of any such agreement is a factual issue, on which the findings of the trial judge are entitled to a great weight.
Walls testified that the July 15 change in rates was agreed upon by E. W. Fisher when it became necessary to use union labor. He prepared and sent a letter to the defendants, outlining the new rates effective on July 15. When he later called Luther Steele of Rock Island about the invoice for the period ending July 31, (which included the increased rates), payment was received shortly thereafter, with the only deduction being the one relative to pipe fitter’s labor.
Walls’ testimony is for the most part consistent with the voluminous documentary evidence in the record. We do not find that the trial judge committed manifest error by accepting this evidence and by concluding that defendants agreed to Messina’s charges, including all of his overhead expenses directly attributable to this job. We therefore affirm the award of the full amount of Messina’s claim.
Finally, defendants contend that interest should be allowed only from the date of judicial demand. Interest is an item of damages due for delay in the performance of an obligation to pay money. C.C. art. 1935. Debts bear interest from the time that the obligation to pay money arises. C.C. art. 1938. In this case the trial court awarded interest from Septem-her 9, 1968, the last date that Messina furnished labor, equipment and materials. There is nothing in the record to indicate that defendants were granted a term for payment, and payment therefore became due when the obligation to pay arose, not when judicial demand for payment was made.
The judgment is affirmed.
Affirmed.

. The pertinent portion of R.S. 37:2157 reads:
“A. For the purpose of this Chapter, a contractor is defined as any person, firm, partnership, co-partnership, association, corporation or other organization, or any combination thereof, who, at a fixed price, commission, fee, wage or salary of thirty thousand dollars or more, undertakes, attempts, or submits a bid to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, material or equipment and installing same for any building, highway, road, railroad, sewer, grating excavation, pipeline or public utility structure, project, development, housing or housing development, improvement, or any other undertaking where the cost of same is thirty thousand dollars or more; * * * ”

. R.S. 37:2160 states in pertinent part:
“A. It shall be unlawful for any person to engage or continue in this state in business of contracting, as defined in this Chapter, without having qualified as a contractor under the provisions of this Chapter. * * *”
3: 3: *»

. The author of the opinion fully agrees that the licensing statute is not applicable, but would prefer to overrule the er-ception on the basis that defendants cannot use the licensing statute to avoid payment of valid charges. The statute specifically provides harsh penalties for its violation and was not intended to allow unjust enrichment to one who contracts with an unlicensed contractor, es-, pecially where misrepresentation is not at issue.