283 So.2d 204 (1973)
Joseph P. MESSINA et al., Plaintiff, Appellee and Respondent,
v.
KOCH INDUSTRIES, INC. (Formerly Rock Island Oil & Refining Co., Inc.), et al., Defendants, Appellants and Applicants.
No. 52971.
Supreme Court of Louisiana.
September 24, 1973.
*205 Tom F. Phillips, A. Michael Dufilho, Taylor, Porter, Brooks & Phillips, Baton Rouge; Fulbright, Crooker and Jaworski, Houston, Tex., of counsel, for defendants-applicants.
Jack W. Thomson, Clay, Coleman, Dutrey & Thomson, New Orleans, for plaintiff-respondent.
CALOGERO, Justice.
Joseph P. Messina, d/b/a J. P. Messina Trucking Service, sued defendants, Koch Industries, Inc. (formerly Rock Island Oil & Refining Co., Inc.) and Matador Chemical Co., Inc., for $61,391.94. The trial court rendered judgment against Koch and Matador in this sum and the Fourth Circuit Court of Appeal affirmed, 267 So.2d 221. We likewise affirm.
On June 6, 1968, Koch (at the time, Rock Island Oil) issued a purchase order to Messina for "Labor, equipment and material to build tank pads for Matador Chemical Company Job #5142 as requested by E. W. Fisher."[1] The purchase order specified the rental rates on various pieces of equipment, materials and laborers. The purchase order concluded with the following statement, "All material and labor excluding dirt and shell will be charged at actual cost plus 10%." No equipment was rented nor was any labor supplied without prior agreement with Litwin Corporation supervisors.[2]
We agree with the following facts found by the court of appeal:
"In addition to that used in building the tank pads, Messina furnished equipment, materials and labor to lay pipe, set pipe support, construct roads, dig an oxidation pond and perform foundation, form, dirt and grading work and in general to provide a back-up crew and equipment *206 for all the construction firms working on the project. However, no specific contract was entered into for any particular job. On a day to day basis Pat Patterson, Litwin's supervisor, simply informed Walls of the amount and type of equipment and labor force which would be needed. Patterson supervised all work done by the equipment and workmen supplied by Messina and signed and approved daily work tickets." 267 So.2d 221, 223 (La.App. 4th Cir. 1972).
Defendants paid Messina $101,451.51 on a series of invoices but refused to pay other invoice billings totaling $61,391.91, whereupon plaintiff sued.[3] The ground for the refusal to pay, urged in defense only after suit was filed, was that Messina was a contractor within the meaning of R. S. 37:2157 and was not licensed as required by R.S. 37:2151-2163.[4] Section 2160 makes it unlawful to engage in the business of contracting (as defined by Section 2157) without having qualified as a contractor, i. e. without having acquired a license from the State Licensing Board for Contractors. Since Messina admittedly had no such license at the time, defendants argue that their "contract" with Messina was unlawful and that as a result he cannot recover under it.
The court of appeal determined that Messina should recover, disposing of defendants' contention by concluding that Messina was not covered by the statute. Their reason for so concluding was that Messina's "contract" with the defendants was a cost plus fixed fee contract which type contract was not covered by the contractors' statute, R.S. 37:2151 et seq.
We affirm, finding no merit in defendants' contention that Messina's activity was covered by the statute.
We are not called upon to determine if cost plus fixed fee contracts generally are or are not covered by the statute. For without regard to that question, it is apparent that Messina, with respect to the work here involved, is not a contractor within the purview of the statute. If he had any enforceable contract(s) or undertaking(s), they were never more than for a single day's work and none were in excess of $30,000.
The statute, at § 2157(A), defines a contractor as,
"Any person, firm ... who ... undertakes, attempts, or submits a bid to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration... or furnishing labor, material or equipment and installing same for any building ..." (emphasis supplied).
We interpret the statute as defining a supplier of labor, material or equipment as a contractor where he is in charge of furnishing labor, material or equipment and he is also in charge of their installation, i. e. the use made of the labor, material or equipment furnished. The conjunctive "and" requires the supplier-potential contractor to be in charge of both furnishing and of installing. Messina is not a contractor under this definition because he was not, and his contract(s) did not place him, in control of both the furnishing of labor, material or equipment and the installing of same. The most that could possibly be said is that Messina was in charge of furnishing, but the record establishes that Pat Patterson, Litwin's supervisor, was in charge of installation.
Further, and perhaps of more significance, we find that under any condition *207 Messina never had a single enforceable contract which equaled or exceeded $30,000.00. Reference to our Civil Code reveals the following relative to contracts.
An obligation is synonymous with duty. La.Civ.Code Art. 1756. A civil obligation is a legal tie, which gives a right of enforcing its performance by law. La.Civ. Code Art. 1757. Civil obligations are of two kinds, those created by operation of law and those which arise from the consent of the parties who are bound by them. La.Civ. Code Art. 1760. A contract is an agreement by which one person obligates himself to another. La.Civ. Code Art. 1761. Contracts legally entered into have the effect of laws on those who have formed them and cannot be revoked except by mutual consent of the parties or for cause acknowledged by law. La.Civ. Code Art. 1901.
A contract presupposes a binding duty/obligation on the parties. Koch alleges that Messina had a "contract" for work which exceeded $160,000.00. However, the trial testimony reveals, as the court of appeal concluded, that there was no binding obligation on the part of either party beyond at most the succeeding day's activities. Messina could discontinue work at any time and Koch could terminate Messina at any time. The most that may be said is that they had a series of day to day contracts, in effect a contract for each day work was performed. No one of these contracts equaled or exceeded $30,000.00. We base this conclusion on the fact that Messina was instructed each day as to what he would have to supply for the next day, and the fact that he had no guarantee of work from Koch beyond that day. No written instrument alleging the existence of any binding duty on either party was produced, nor even alleged. The trial testimony explicitly reveals that there never was any such duty beyond the succeeding day.
Defendants contend, in the alternative, that if it is found that Messina has not violated the statute, that the debt due him should be reduced by $5,244.49. They claim that this amount is in excess of actual costs. We have reviewed the evidence in this regard and find the contention has no merit.
For the foregoing reasons we affirm.
Judgment affirmed.
NOTES
[1] This document, a printed form designated Rock Island Oil & Refining Co., Inc., Purchase Order No. 26333, dated 6/6/68,
 "To J. P. Messina Trucking Service
 520 Government Street
 Address Plaquemine, Louisiana 70764
 Ship To Matador Chemical Company
 St. James, La."

is signed on each sheet by one Luther Steele, purchasing agent, Rock Island Oil & Refining Co., Inc. It is not signed by J. P. Messina Trucking Service or any representative of such company. For the work which is the subject of this litigation, this purchase order is the document which defendants rely upon as the "contract".
[2] Litwin Corporation was described as the general supervisors of the project by Paul Wilkinson who was the President of Matador Chemical Company during the time in which this work was done. C. W. Fisher was a Litwin supervisor. See text at footnote 1. The relationship between Koch and Matador or among Koch, Matador and Litwin is not made clear in the record. Suffice it to say that Koch took the lead in constructing an industrial plant for Matador. Litwin apparently supervised the work.
[3] Messina issued invoices every 15 days based upon the daily work tickets, which tickets were signed by the Litwin supervisor. Copies of the invoices were set to Koch, Matador and Litwin.
[4] The statute only attempts to cover contracts which equal or exceed $30,000.00 except for residences to be occupied by not more than four families unless that cost exceeds $75,000.00.