588 So.2d 1268 (1991)
STATE LICENSING BOARD FOR CONTRACTORS
v.
LOUISIANA STATE DEPARTMENT OF AGRICULTURE AND FORESTRY and Louisiana Agricultural Finance Authority.
No. 91 CA 0430.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Writ Denied January 6, 1992.
*1269 Jon C. Adcock, Baton Rouge, for plaintiff-appellant Louisiana State Licensing Bd. for Contractors.
C. James Gelpi, New Orleans, for defendant-appellant Louisiana Dept. of Agriculture and Forestry and Louisiana Agricultural Finance Authority.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit for declaratory judgment and injunctive relief.

FACTS
On December 21, 1989, petitioner, the State Licensing Board for Contractors (Board), filed a petition for injunction, seeking to enjoin the defendants, the Louisiana State Department of Agriculture (Department) and the Louisiana Agricultural Finance Authority (LAFA), from performing construction on an office building at 5150 Florida Boulevard in Baton Rouge, Louisiana. The Board alleged that, under LSA-R.S. 37:2160, it is unlawful for any person to engage in the business of contracting without having qualified as a contractor under the applicable law and without obtaining a license from the Board. The Board subsequently amended its petition for injunctive relief, seeking to enjoin the new construction at the Louisiana State University campus in Baton Rouge, Louisiana. The Board also amended its petition, seeking a declaratory judgment determining that defendants' performance of commercial construction in excess of $50,000.00 without a license was a violation of LSA-R.S. 37:2150 et seq. and that the use of Department employees to perform such work also constituted the performance of such construction.
The parties subsequently entered into stipulations, which provided, in pertinent part, as follows:
22. That the Louisiana Department of Agriculture and Forestry and Louisiana *1270 Agricultural Finance Authority intend to construct the chemistry laboratory building in the following procedure:
....
2. Upon completion of the design and construction document phase, the engagement of a licensed contractor through a bidding process identical to that established in Louisiana R.S. 38:221 et seq.
3. The accomplishment of some of the construction through the services of existing employees of the Louisiana Department of Agriculture and Forestry and the Louisiana Agricultural Finance Authority, all of whom will be acting on behalf of the Louisiana Agricultural Finance Authority while providing said services but whom will be paid by the Louisiana Department of Agriculture and Forestry for same.
4. The contemplated construction will be fully supervised and partially accomplished by a contractor licensed by the State Licensing Board for Contractors.
23. The Department of Agriculture and/or LAFA have no contractor's license from the State of Louisiana.
24. The employees who will actually help perform the construction of the Agricultural Chemical Laboratory Building will be regular Department of Agriculture employees who will work on the project on special assignment on a part-time basis.
....
26. The Agricultural Chemical Laboratory Building will be owned by LAFA during and after the construction.
After a hearing on the declaratory judgment, the trial court determined that neither of the defendants is exempt from the provisions of LSA-R.S. 37:2150 et seq., but that the defendants may utilize the services of the Department's employees to participate in the accomplishment of the construction. With regard to the Board's request for injunctive relief, subsequent to the trial court's determination on the request for declaratory relief, the parties entered into a consent judgment.[1] In the consent judgment, the parties agreed that at all times of construction of the chemistry building at LSU, defendants would engage a licensed primary contractor.[2] The parties also agreed that the primary contractor may, at the option of the Department, utilize the service of workers normally employed by the Department and that such employees shall be supervised by a licensed contractor.
Thereafter, both parties appealed the trial court judgment on the declaratory judgment. The Board contends that the trial court erred in holding that the defendants could lawfully furnish the labor on construction projects valued at over $50,000.00 under the Contractor's Licensing Law, LSA-R.S. 37:2150 et seq. Defendants contend that the trial court erred in finding that they were subject to the Contractor's Licensing Law with regard to performing construction without having a qualified licensed contractor and without obtaining a license from the Board.

APPLICABILITY OF CONTRACTOR'S LICENSING LAW
Defendants contend that the Contractor's Licensing Law does not apply to LAFA or the Department for several reasons. Defendants reason that they are not engaged in the business of contracting. Defendants also reason that, as owner of the building, they are not required to comply with the Contractor's Licensing Law. Defendants further reason that the statutes were intended to apply to private businesses *1271 and not to state agencies or departments. Finally, defendants reason that LAFA is specifically authorized by the Louisiana Agricultural Finance Act, LSA-R.S. 3:261 et seq., to undertake the construction of immovable property and is expressly exempted from obtaining the consent of any other state agency in accomplishing this purpose.
A. Are Defendants Engaged in the Business of Contracting?
LSA-R.S. 37:2150 provides the purpose of the Contractor's Licensing Law as follows:

[T]he protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract. Further, the legislative intent is that the State Licensing Board for Contractors shall monitor construction projects to ensure compliance with the licensure requirements of this Chapter. (emphasis added).
LSA-R.S. 37:2157 A(3)(a)[3] defines "contractor" as follows:
[A]ny person who undertakes to, attempts to, or submits a bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, material, or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes other than a single residential duplex, a single residential triplex, or a single residential fourplex.
"Commercial purposes" is defined as "any construction project other than residential homes, a single residential duplex, a single residential triplex, or a single residential fourplex." LSA-R.S. 37:2157A(2).
Under the clear wording of these statutes, if an entity performs any of the acts on any structure other than residential property for which the cost exceeds $50,000.00, it is a contractor and is subject to the Contractor's Licensing Law.
Defendants' construction of the LSU chemistry building, the cost of which presumably exceeds $50,000.00, is clearly the type of act defined by the Contractor's Licensing Law to be "the business of a contractor." Having determined that this undertaking is within the contemplation of the business of contracting, we must determine whether a state agency is included within those persons covered by the law.
B. Are defendants "persons" within the contemplation of the Contractor's Licensing Law?
LSA-R.S. 37:2157A(5) defines a "person" as follows:
[A]ny individual, firm, partnership, association, joint venture, cooperative, or corporation, or any other group or combination acting in concert; and whether *1272 or not acting as a principal, trustee, fiduciary, receiver, or as any other kind of legal or personal representative, or as a successor in interest, assignee, agent, factor, servant, employee, director, officer, or any other representative of such person. (emphasis added).
Defendants contend that because the enumeration in LSA-R.S. 37:2157A(5) does not specifically list the government, governmental subdivisions, or agencies, the provisions of the Contractor's Licensing Law do not apply to them.
In cases involving statutory interpretation, well established rules dictate that when the law is clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Colwell v. State, Office of Attorney General of Louisiana, Department of Justice, 506 So.2d 941, 943 (La.App. 1st Cir.), writ denied, 508 So.2d 89 (La.1987).
In the instant case, the provisions of LSA-R.S. 37:2157A(5) enumerate every type of person, either specifically or generally, in all capacities and is inclusive of any and all persons, including departments of the state government, its political subdivisions, and any and all other groups who engage in the business of contracting. If the Legislature had intended to exclude from the provisions of the Contractor's Licensing Law governmental bodies, such exclusion could easily have been set forth in the statute.
C. Are Defendants, as Owner of the Building, Exempt?
LSA-R.S. 37:2157C provides that the provisions of subsection A do not apply to the following groups of persons:
(1) Owners of property who supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or maintenance of any building, railroad excavation, project, development, improvement, plan facility, or any other construction undertaking, on such property, for use by such owner and which will not be for sale, rent, public use or public assembly. (emphasis added).
In the instant case, although defendants own the property, the building is a public building on the LSU campus and will be used for public assembly within the contemplation of this provision. As such, even though defendants are the owners of such property, they are not exempt from the provisions of LSA-R.S. 37:2157A.
D. Are Defendants authorized by the Louisiana Agricultural Finance Act, LSA-R.S. 3:261 et seq., to construct buildings without compliance with the Contractor's Licensing Law?
In enacting LSA-R.S. 3:261 et seq., the Legislature determined that there existed in the State of Louisiana "a serious shortage of capital and credit available for investment in agriculture" and "a need to provide economic assistance" to persons engaged in the agricultural industry. LSA-R.S. 3:262A. The Legislature also determined that "private enterprise and existing federal and state governmental programs have not adequately alleviated the severe shortage of capital and credit available at affordable interest rates." LSA-R.S. 3:262B. To alleviate this severe shortage, the Legislature created the Louisiana Agricultural Finance Authority and empowered it to remedy this problem. LSA-R.S. 3:262C. In enacting LSA-R.S. 3:266, the Legislature also endowed this newly created authority with certain powers, including but not limited to, the powers to:
. . . . .
(5) Make and execute contracts and all other instruments necessary or convenient for the exercise of its powers and functions under this Chapter with any federal or state governmental agency, public or private corporation, lending institution, or other entity or person.
. . . . .
(14) Acquire or contract to acquire from any person, firm, corporation, municipality, federal or state agency, by grant, purchase, or otherwise, movable or immovable property or any interest therein; *1273 own, hold, clear, improve, lease, construct, or rehabilitate, and sell, invest, assign, exchange, transfer, convey, lease, mortgage, or otherwise dispose of or encumber the same, subject to the rights of holders of the bonds of the Authority, at public or private sale, with or without public bidding.
. . . . .
(20) Issue revenue bonds for the purpose of acquiring, constructing, renovating, and equipping an office building and connected related facilities for use by the Department of Agriculture and Forestry in connection with the promotion and assistance of agriculture and forestry within this state.
It is well established that statutes are to be construed in such a manner as to effectuate their purpose. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 400 (La. 1980). A particular statute should be construed along with the remainder of the statute and in connection with all laws on the same subject matter. Smith v. Cajun Insulation, Inc., 392 So.2d at 400.
It is clear that the provisions of LSA-R.S. 3:261 et seq. address the authority of LAFA with regard to the financing of projects and the funding of loans designed to assist the agricultural industry. The statutory scheme does not purport to permit LAFA to construct facilities without compliance with other positive law, like the Contractors' Licensing Law. Although defendants point to LSA-R.S. 3:274 to support their contention that LAFA does not need the approval of any other governmental body to utilize its powers, that provision specifically addresses the issuance, sale, or delivery of bonds, the making, purchase, sale, or issuance of loans, or the exercise of any other power of the authority, and does not give LAFA the right to exceed its statutory authority.
After carefully reviewing all of the pertinent statutory provisions, we find that the trial court was correct in its determination that defendants are required to comply with the provisions of the Contractor's Licensing Law.

USE OF DEPARTMENT EMPLOYEES
Prior to the 1988 amendment of LSA-R.S. 37:2157, effective January 1, 1989, the pertinent portion of LSA-R.S. 37:2157 defined a "contractor" as any person who assumes charge of "furnishing labor, material, or equipment and installing same." (emphasis added). The pre-1989 statute was analyzed in Messina v. Koch Industries, Inc., 283 So.2d 204 (La. 1973), wherein the court noted that the use of the conjunctive "and" required the supplier-contractor to be in charge of both furnishing and installing. The court reasoned that the person alleged to be a "contractor" was not a contractor under the definition in the statute because he was not in control of both furnishing of labor, material, or equipment and installing of same. Messina v. Koch Industries, Inc., 283 So.2d at 206. Similarly, in Hagberg v. John Bailey Contractor, 435 So.2d 580, 583 (La.App. 3rd Cir.1983), writs denied, 444 So.2d 1245 (La.1984), our brethren of the Third Circuit addressed the issue of whether the use of one's employees made a firm a contractor under LSA-R.S. 37:2157 and determined that, for purposes of LSA-R.S. 37:2157A, a contractor must not only furnish labor, material or equipment, but he must also oversee its installation in the project.
Among other changes made by the 1988 amendment to LSA-R.S. 37:2157, the conjunctive "and" was changed to the disjunctive "or," causing the relevant portion of the statute to define "contractor" as one who:
[U]ndertakes to, attempts to, or submits a bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, material, or equipment, or installing the same for any building ... or any other construction undertaking for which the entire cost of same is fifty thousand dollars or more.... (emphasis added).
*1274 The statute, as amended, applies to the instant case. Under the clear language of the statute, a person who furnishes labor or is in charge of installing the labor for which the cost exceeds $50,000.00 is a contractor. In the instant case, in contrast to the prior statutory provisions and the reasoning set forth in Messina and Hagberg, we find that the trial court erred in finding that defendants could engage their own employees in the construction of the LSU chemistry building without compliance with the Contractor's Licensing Law.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed insofar as it determined that defendants are not exempt from the provisions of the Contractor's Licensing Law. However, we reverse that portion of the trial court judgment permitting the defendants to supply Department of Agriculture employees without complying with the Contractor's Licensing Law. Costs in the amount of $1,022.50 are to be paid by defendants.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] The consent judgment specifically provided that it was based upon the declaratory judgment rendered by the court, which judgment is the subject of the instant appeal, and that by entering into this consent judgment neither party was acquiescing in the declaratory judgment, but reserved their rights to appeal such judgment. The consent judgment was entered into solely for the purpose of compromising the dispute with regard to enjoining the ongoing construction of the LSU project.
[2] The consent judgment specifically provided that the licensed primary contractor would have primary responsibilities of all construction and would engage and supervise construction activities of the project and all subcontractors on the project.
[3] Prior to amendment by Acts 1988, No. 635, § 1, effective January 1, 1989, LSA-R.S. 37:2157A(1) provided as follows:

For the purpose of this Chapter, a contractor is defined as any person, firm, partnership, copartnership, association, corporation, or other organization, or any combination thereof, who undertakes, attempts, or submits a bid or offer to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, material, or equipment and installing same for any building, highway, road, railroad, sewer, grating, excavation, pipeline, public utility structure, project, development, housing, or housing development, improvement, or any other construction undertaking for which the cost of same is fifty thousand dollars or more.
By Acts 1989, No. 559, § 1, LSA-R.S. 37:2157(A)(1) was again amended. The above quoted portion of the provision remained unchanged, but was designated as subparagraphs 3(a)-(d).