| ^STATEMENT OF FACTS
• Percy Butler, Jr. and his wife, Carla Butler, organized Magnolia Springs, L.L.C. (Magnolia Springs) in order to develop . an affordable residential development in St. Gabriel, Louisiana. After receiving bids for the project in 2009, the Butlers ultimately elected to hire Nor-thgate Land Development Corporation (Northgate), a company which was represented by the defendant. The parties entered into a contractual agreement in June of 2009. Under the $968,370.00 contract, Northgate specifically agreed to develop two streets, and an infrastructure including sewerage, water, drainage, curbs and gutters, to complete the construction of the Magnolia Springs Subdivision. Magnolia Springs agreed to pay Northgate progressively upon certification of invoices individually submitted to request a “draw” or payment based on the work completed toward the project. Specifically, under the agreement once Magnolia Springs certified or approved an invoice, payment was made to Northgate to pay bills incurred in accordance with the invoice. Northgate began working on the project in July of 2009, and before April of 2010, $538,297.31 had been paid to Northgate for work completed toward the project.
On April 1, 2010; Northgate submitted' an invoice with a net draw request of *1165 approximately $100,910.58 and Magnolia Springs paid the draw. A portion[1] of the draw was based on concrete pavement for a gross amount of $104,098.00 and a net amount (after the deduction of 7% for re-tainage) of $96,811.14. Thus, Mr. Butler expected that Northgate would use this draw to pay for all the labor and material for concrete pavement up to that point. In June of 2010, Magnolia Springs received notice of a privilege filed by Heck Industries, Inc. (Heck) for concrete materials and/or labor for $105,162.17 which included sums previously paid by Magnolia Springs to Northgate to pay Heck. Thus, Magnolia Springs became 14aware of the fact that Northgate did not pay for some of the concrete expenses as requested. in the April draw. Magnolia Springs ultimately canceled the contract and completed and/or corrected work as necessary to build houses in the subdivision. In 2011, Magnolia Springs paid Heck Industries (Heck) a total of $52,000.00 for expenses incurred after the April 1st services and draw, leaving a balance owed to Heck of approximately $53,000.00, an amount which Magnolia Springs had already paid to Nor-thgate in the April draw in order to pay Heck.

ASSIGNMENT OF ERROR NUMBER ONE (ORIGINAL BRIEF)/ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE (SUPPLEMENTAL BRIEF)

In assignment of error number one of his original brief, regarding count one, the defendant concedes the existence of a contract to construct, erect, or repair and the receipt of money on the contract. However, the defendant denies any knowing 'failure to apply the money received as necessary to settle claims for material and labor due under the contract. Specifically, the defendant contends that the State did not provide any evidence as to the “special mental element” of this offense. Regarding count two, the defendant contends that the evidence in this case shows that Nor-thgate was licensed. The defendant notes that the State may contend that the license held by Northgate in 2009 did not cover the classification of contracting that was needed for the project in question. The defendant argues that improper classification would not provide a basis for a conviction of engaging in the business of contracting without authority pursuant to La. R.S. 37:2160, but would instead be a violation of the classification requirement in La. R.S. 37:2159. The defendant further contends that performing work outside of one’s classification in violation of La. R.S. 37:2159 does not have criminal consequences and is a matter to be resolved by the Board of Contractors in accordance with La. R.S. 37:2153. |fiThe defendant notes that the Board of Contractors conducted a hearing pursuant to La. R.S. 37:2153 on the issue, at which Northgate pled no contest, and imposed a one thousand dollar fine and a proper classification mandate.
In assignment of error number two of the supplemental brief, the defendant bolsters the sufficiency of his evidence argument. Regarding count one, the defendant specifically contends that the evidence irrefutably shows thát he was not responsible for paying subcontractors and, alternatively, the State failed to prove that he knowingly misapplied contractor funds. The defendant further contends that the evidence proves that Northgate paid everything it received to the subcontractors and that unpaid invoices emanated from work done after Northgate was last paid. The defendant notes that Northgate was owned by his wife, Stephanie Allen, as opposed to the defendant who was merely an employee granted authority by his son, Louis Al *1166 len, Jr., to execute the contract with Magnolia Springs. The defendant further notes that his son had a contractor’s license. The defendant contends that Magnolia Springs failed to pay Northgate for work and materials after April 1st, 2010. The defendant argues that there is no evidence that he knowingly misapplied the money Northgate did receive or paid for anything other than labor and material expenses, and that the State failed to exclude every hypothesis of innocence. Further, the defendant argues that the State did not overcome Mrs. Allen’s testimony that she was responsible for paying Northgate’s expenses or her explanation as to the work completed after April 1, 2010 and expenses incurred for which neither Magnolia Springs nor the Butlers paid Northgate. Thus, the defendant contends that in this case Magnolia Springs stopped work and canceled the contract before completion, had the contractor work without payment for two additional months which required labor, and lied to the defendant so as not to release any payment.
| (¡Regarding count two, the defendant specifically argues that there is no evidence that he is a contractor or was engaged in the business of contracting. Further, the defendant reiterates that he only executed the contract with Magnolia Springs under the authority of his son, Louis Allen Jr., who testified about his status as the site superintendent for Nor-thgate as confirmed by State witness Kala Kearney. Finally, the defendant reiterates that Mrs. Allen owned Northgate at the time of the contract with Magnolia Springs, and the record contains copies of Northgate’s contractor licenses for 2009 and 2010 permitting it to engage in construction.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt.[1] See La. Code Crim. R. art. 821(B); State v. Ordodi, 06-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Hearold, 603 So.2d 731, 734 (La.1992). This standard of review, in particular the requirement that the evidence be viewed in the light most favorable to the prosecution, obliges the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. See State v. Mussall, 523 So.2d 1305, 1308-11 (La.1988). The Jackson standard of review incorporated in Article 821 is 17an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. State v. Davis, 00-2685 (La.App. 1st Cir.11/9/01), 818 So.2d 76, 79. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 01-2585 (La.App. 1st Cir.6/21/02), 822 So.2d 141, 144. When a *1167 case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), twit denied, 514 So.2d 126 (La.1987).
Misapplication of payments by a contractor is prohibited under La. R.S. 14:202(A). The essential elements of the crime are: (1) the existence of a contract to construct, erect, or repair a building, structure, or other improvement; (2) the receipt of money on the contract; and (3) a knowing failure to apply the money received as necessary to settle claims for material and labor due under the contract. State v. Spears, 05-0964 (La.4/4/06), 929 So.2d 1219, 1223. The defendant does not dispute the first two elements the State was required to prove, the existence of the contract and the receipt of the money. Only the third element, a knowing failure to apply the money received to settle claims, is at issue on appeal. However, proving misapplication of the funds is not enough. The State was required to prove that the misapplication was made knowingly. Specific intent may be inferred from the circumstances and actions of the defendant. Spears, 929 So.2d at 1223-24. This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder’s determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). Whether a defendant possessed the requisite intent in a criminal case is | «draw, the defendant told Mr. Butler that the concrete pavement request included the pour for that day. According to Mr. Butler, $53,500.00 paid on the April 1st invoice comprised part of the Heck lien since it was never actually paid to Heck. Before directly paying Heck, Magnolia Springs did about $275,000.00 worth of work (correcting defects, redoing and/or completing work) to get the subdivision presentable to build houses on it. It was supposed to be a six month contract but the job was still incomplete entering a year. According to Mr. Butler, any funds withheld from the defendant after April 1st was due to defects/failure to pass inspection. Mr. Butler further testified that after April 1st, Magnolia Springs paid nearly $200,000.00 to the Northgate’s subcontractors and to post cash bonds to release subcontractor liens. Prior to April, Magnolia Springs paid Northgate approximately $639,000.00 toward the completion of the $968,000.00 contract and the work was not complete by that time. Thus, Mr. Butler was questioned as to whether the defendant underbid the project. Mr. Butler responded negatively, noting that he had to redo work that was completed and further insisting that if the defendant had done the work properly initially, the project would have cost less money to complete. Mr. Butler noted that the concrete draw/payment included more than just raw materials but included other expenses like a pump truck, steel, laborers, and cement finishers. Mr. Butler admitted that he initially misled Northgate by telling them that Magnolia Springs’s bank was withholding funds until Northgate completed the job. Mr. Butler further testified that he did not pay the defendant the balance on the contract because Northgate indicated that it would not complete the work. Mr. Butler initially indicated that Nor-thgate substantially completed the job, which he defined as two-thirds complete, and confirmed that he sent an e-mail to Northgate describing the work as such. Mr. Butler subsequently testified that he mistakenly classified the project as substantially complete adding, | ¿‘Because I couldn’t even get in my subdivision. If I said it, I made a mistake.”
*1168 State witness George Woolley, Heck’s credit manager, testified regarding the $105,162.17 owed to Heck on the project. Wooley testified that Heck expected payment within thirty days of its invoice date. Wooley confirmed that Magnolia Spi'ings paid Heck $52,000.00 of the total. Wooley further testified that Northgate began making monthly payments to Heck on September 19, 2011, and that about $30,000.00 is still owed to Heck for the project.
Kara Lafleur Kearney, the public information director and custodian of records at the State Licensing Board for Contractors, testified that their records reveal that the defendant has never been licensed with the State Licensing Board of Louisiana. However, Kearney further testified that Nor-thgate has been a licensed entity (commercial building license) since September 21, 2006. Their license was subject to expiration after the trial, on September 21, 2013, if not renewed. Further, Louis Allen, Jr. (the defendant’s son) is listed as a qualifying party for the company. Kearney further testified that effective February 23, 2012, the company obtained a municipal and public works construction license under the name of Stephanie Vernon Allen, the defendant’s wife. Louis Allen, Jr. did not have a municipal and public works license.
Louis Allen, Jr. (the defendant’s son) initially testified as a State witness and was recalled' during the defense’s case. He testified that he was the site superintendent for Northgate and that Mrs. Allen (the defendant’s wife and Allen Jr.’s stepmother) handled the bookkeeping and finances. Although his name is on the contract, Allen, Jr. confirmed that he did not sign the contract and testified that he gave the defendant permission to sign the contract on his behalf. He confirmed that he was the qualifying party for the company. Hé testified that some of the subcontractors did not get paid because Northgate did not get fully paid.' Allen, Jr. |'1ftfurther testified that after the last draw, Mr. Butler told them to keep working on good faith although the bank would not release funds until the job was complete. Allen, Jr. noted that they “substantially completed” the job, which he further described as 90% complete. He confirmed that Nor-thgate was making payments to Heck for Northgate’s portion of the bill. When asked why they were making payments if they did not lawfully owe Heck money, Allen, Jr. stated he did not know why they were making the payments and that if it were up to him, the payments would not be made because the funds were not paid to Northgate. As the first defense witness, Allen, Jr. reiterated that the Butlers contracted with Northgate as opposed to the defendant directly, and that Northgate had a commercial license from the State Board.
Defense witness Charles Dempsey, a concrete construction contractor, subcontracted with Northgate to lay out the site for the streets, shoot elevations, and eventually to do the form work for streets and gutters for the project in question. Dempsey testified, that he worked from about November of 2009 to sometime in June of 2010 and that up until that point, he was getting paid by Northgate on a regular basis as he submitted invoices. He walked out on the project because he stopped getting paid. He testified that it was his understanding that Northgate stopped paying because they were no longer getting paid by Magnolia Springs. He further testified that he was still owed nearly $22,000.00, and that neither Mr. Butler nor Northgate paid any amount toward that total. Dempsey specifically confirmed that Northgate did not pay him after April 1st.
*1169 Mrs. Allen testified as- the final defense witness. Mrs. Allen noted the defendant’s son, Louis Jr., and Regina Allen had transferred their shares of the company to her and that she was the sole1 owner of the company in 2009 when they contracted' with the Butlers via their company, Magnolia Springs, L.L.C. She |nnoted that Northgate was incorporated in 2005 and obtained a commercial license at that time. She further testified that the Magnolia Springs contract was ■ for about $963,000.00, and the contract was set up so that Northgate would work thirty days, submit an invoice, and at that point Magnolia Springs’s engineer would review the invoice and approve the request or give a reason why payment would be withheld. After approval,- Magnolia Springs had seven days to pay the request, withholding a seven percent retainage for the entire job. Mrs. Allen further testified that either the defendant or his son would bring the checks from Magnolia Springs to her, and she would deposit them. Noting that the defendant did not generally handle such matters, Mrs. Allen testified that she handled the banking and was the one who issued the checks and paid the bills. She further testified that all of the money received from the particular job in question went toward the discharge of debts on that job. Mrs. Allen also contended that Nor-thgate substantially completed the project which she clarified as 90% complete. She further testified that as in this case, a contract cannot be canceled once the work is at a 90% completion. She noted that the Butlers informed them that their bank refused to pay invoices after April 1, 2010 until the job was complete. Mrs. Allen further indicated that based on correspondence and meetings with the Butlers, Nor-thgate thought that if they continued working until the project was complete, they would get paid the rest of the money under the contract. She noted that they were owed $263,000.00 which she indicated was enough to discharge the debts associated with the job. Mrs. Allen further testified that all of the liens were based on amounts for which Northgate had not been paid. She specified that the unpaid debts were for work done after the April 1, 2010 invoice. Mrs. Allen contended that the object of the misappropriation claim was actually money Northgate never received.
' Mrs. Allen conceded that a portion of the total owed to Heck was based on 112cement supplied before the April 1, 2010 draw. - She further conceded that one of the payments made by the Magnolia Springs to Northgate’s subcontractors was based on a claim that arose before the April draw while the others were incurred after that draw and owed by Magnolia Springs. At one point during her testimony, Mrs. Allen indicated that Northgate may have misappropriated $53,000. She then testified, “But how could we when we have all of these other debts out there to do. I mean this job couldn’t have been near completion without all of the extra materials that go into putting the concrete down. We easily paid that and more.” She maintained that Heck did not get paid because Northgate took the money they received from Magnolia Springs and applied it'towards the completion of the job. She confirmed that Northgate also filed a lien for $263,269.77, and that on May 19, 2010, she signed a hen release waiver saying that Northgate got paid and that all of the debts before April 1st were paid or would be paid. Mrs. Allen indicated that Northgate- complied with Magnolia Springs’s request to sign the waiver because they wanted to cooperate and were hoping that they would get paid if they continued to work with Magnolia Springs. Mrs. Allen further testified that a civil suit filed by the Butlers against Northgate was pending at the time of the trial. Mrs. *1170 Alien identified certified copies of Nor-thgate’s contractor’s licenses from the State Licensing Board of Contractors for 2009 and 2010.
Mrs. Allen confirmed that a complaint was lodged with the State Contracting Board alleging that in agreeing to do the project in question, Northgate contracted to perform a type of work that was not included in their license. She indicated that although Northgate was licensed, it was not licensed to complete the streets and sewer portion of the project and paid a fine as a result of its contracting out of its license class. Mrs. Allen specifically denied taking money from the Magnolia Springs job to pay the concrete bill on an outside project referred to as Pride-Port |13R.S. 15:438. Here, regarding count one, one reasonable hypothesis is that Nor-thgate misapplied some of the funds from the April draw. However, there are other reasonable hypotheses of innocence. For example, Northgate could have initially underestimated the costs of labor and material required, or construction delays could have increased labor or material costs beyond the funds received, or there may have been other cost overruns. The evidence in this case does not exclude these or other reasonable hypotheses of innocence. We find, viewing the evidence in the light most favorable to the State, that a rational trier of fact could not conclude the evidence established beyond a reasonable doubt the defendant misapplied payments in violation of La. R.S. 14:202.
As to the conviction on count two, engaging in the business of contracting without authority causing damages in excess of three hundred dollars, we find La. R.S. 37:2160 inapplicable to this case. Section 37:2160(A)(1) prohibits any person from engaging in the business of contracting or acting as a contractor “unless he holds an active license as a contractor^]” Thus, if a member of a limited liability company personally acts in the capacity as a contractor without an active contractor’s license accorded to himself or to the limited liability company, that member’s actions constitute criminal conduct. See La. R.S. 37:2160(A)(1); see also Ogea v. Merritt, 13-1085 (La.12/10/13), 130 So.3d 888, 902-03. Herein, the evidence established, without contradiction, that the general contractor for this construction project was Northgate, which, at all pertinent times, held an active contractor’s license. The evidence further established that the defendant, in performing work under the contract, acted in a representative capacity on behalf of Northgate, a fact which was acknowledged by the representative of the property owner, who agreed at trial that the defendant was “at the site day to day on behalf of Northgate.”
| uWhile our courts have not previously decided when a person acts outside of the authority of a contractor’s license granted to a legal entity, see Ogea, 130 So.3d at 903, n. 12, the State produced no evidence at trial indicating that the defendant' ever acted independently of Northgate, or without the company’s authorization in connection with this project. Although a corporation is a juridical person with a personality distinct from that of its members, it only acts through its officers, employees, and other agents. See La. Civ. Code art. 24; Kevin Associates, L.L.C. v. Crawford, 03-0211 (La.1/30/04), 865 So.2d 34, 41. Consequently, the “person” who engaged in the business of contracting in this instance was Northgate, and that entity held an active license as a contractor. See La. R.S. 37:2150.1(6)(a) (defining “[g]eneral contractor” as “a person who contracts directly with the owner”); and La. R.S. 37:2150.1(9) (defining “person” to include a “corporation ... or any other entity recognized by Louisiana law”).
*1171 We recognize that the evidence established that Northgate contracted for work (municipal street construction) that was beyond the scope of the classification of its license at the time the contract was executed. However, that conduct was a violation by Northgate of Louisiana Revised Statute 37:2159(B), which does not provide for criminal penalties. Instead, Section 37:2159 is subject to administrative and civil enforcement by the State Licensing Board for Contractors pursuant to Louisiana Revised Statutes 37:2158 and 37:2162. The record reflects that the Board undertook enforcement action against Northgate to address that violation.
In this criminal proceeding, the defendant was not charged with a violation of Section 37:2159. Rather, the bill of information charged him with a violation of Section 37:2160, which prohibits a person from engaging in the business of contracting or acting as a contractor “unless he holds an active license as a | lscontractor.” Criminal statutes are subject to strict construction under the rule of lenity. State v. Odom, 07-0516 (La.App. 1st Cir.7/31/08), 993 So.2d 663, 671 (per curiam). Statutes are to be construed in a manner to effectuate their stated purpose. A particular statute should also be construed in light of the other applicable statutes on the same subject matter. Louisiana Associated General Contractors, Inc. v. Louisiana Department of Agriculture and Forestry, 03-2501 (La.App. 1st Cir.12/17/04), 897 So.2d 699, 701, affirmed, 05-0131 (La.2/22/06), 924 So.2d 90; State Licensing Board for Contractors v. Louisiana State Department of Agriculture and Forestry, 588 So.2d 1268, 1273 (La.App. 1st Cir.1991), lorit denied, 590 So.2d 598 (La.1992) (statutorily overruled by La. R.S. 3:266(21) on another point of law). However, if the statute is clear and free from ambiguity, the letter of the law may not be disregarded under the pretext of achieving the spirit. Louisiana Associated General Contractors, Inc., 897 So.2d at 701; State Licensing Board for Contractors, 588 So.2d at 1272. Although the scope of the contracted work exceeded the classification of Northgate’s license, the criminal prohibition of Section 37:2160 does not apply to a person who “holds an active license as a contractor.” Northgate held an active license, and the defendant was acting on behalf of Northgate. Thus, based on the evidence, a rational trier of fact could not conclude that the defendant engaged in the business of contracting without authority of a valid contractor’s license in violation of La. R.S. 37:2160.
Considering the forgoing, we find that the assignments of error (assignment of error number one of the original brief, and assignments of error numbers two and three of the supplemental brief) challenging the sufficiency of the evidence in support of the verdicts have merit. Thus, we must reverse the convictions and sentences on counts one and two herein, and ■ discharge the defendant as to counts one and two. In light of this conclusion, we preter-mit any discussion of the | lfiremaining assignments of error in the original and supplemental briefs.
CONVICTIONS AND SENTENCES ON COUNTS ONE AND TWO REVERSED; DEFENDANT DISCHARGED ON COUNTS ONE AND TWO.

. When the entirety of the evidence, including any inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot. State v. Hearold, 603 So.2d at 734.