298 So.2d 897 (1974)
Lovic C. DESORMEAUX, Plaintiff-Appellee,
v.
INEXCO OIL COMPANY, Defendant-Appellant.
No. 4584.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied September 4, 1974.
Writ Refused October 28, 1974.
*898 Bailey & Hollier by George J. Bailey, Lafayette, for defendant-appellant.
Pugh, Buatt, Landry & Pugh by J. W. Landry, Jr., Crowley, for plaintiff-appellee.
Before FRUGÉ, DOMENGEAUX and WATSON, JJ.
FRUGÉ, Judge.
This is a suit for a declaratory judgment between a mineral lessor and his lessee. Plaintiff-lessor sought judgment decreeing that his unleased acreage, included within a unit, was entitled to share the production obtained from the unit well since the date of completion, on the same basis as though the unit had been effective on the date the well was completed. In the alternative, plaintiff prayed that his unleased acreage be decreed entitled to share in production from the effective date of the unit order, without contributing any part of the cost of drilling or completing the unit well. The trial court sustained plaintiff's alternate demand. Defendant appeals, and plaintiff has answered. We affirm.
Defendant filed exceptions of improper venue, lack of jurisdiction over the subject matter and prematurity, all of which were sustained by the trial court. These exceptions were subsequently overruled by this court, 277 So.2d 218, and the case was remanded for trial on the merits.
Appellant specifies as error the holding of the trial court that plaintiff was entitled to the use and benefit of the well for the purpose of obtaining production from the unleased acreage without contributing to the cost of drilling and completing the well. Appellant contends that the order directing defendant to account to plaintiff for unit production accrued to the unleased acreage after the date on which the suit was filed with interest from judicial demand is in error since such relief was not prayed for by plaintiff in his petition. In his answer plaintiff-appellee seeks judgment on his principal demand that he is entitled to production attributable to the unleased acreage from the date of the first production of the well on the same basis as though the unit had been effective on that date.
We believe the issues to be determined herein as follows: (A) Whether the rule of capture applies between a mineral lessor and his lessee; or whether the plaintiff's unleased acreage is entitled to share in production obtained from defendant's well prior to unitization.
(B) Whether plaintiff's unleased acreage is entitled to the use and benefit of the unit well, which was drilled by defendant, at its own cost and risk, without bearing any part of the cost of drilling and equipping the well.
(C) Whether the judgment of the district court directing defendant to account for all unit production accrued to the unleased acreage, after the date the suit was filed, with interest from judicial demand is beyond the scope of relief prayed for by plaintiff.
The facts were stipulated by the opposing parties and the matter was submitted to the trial court for decision on pleadings, exhibits, and stipulation filed in the record. On February 16, 1968, plaintiff executed an oil, gas, and mineral lease in favor of the Kerr-McGee Corporation covering certain property owned by plaintiff in Acadia Parish, Louisiana. Inexco Oil Company subsequently acquired all rights under the mineral lease. On September 20, 1970, Inexco Oil Company completed the L. Desormeaux No. 1 well on land covered by the lease.
The Department of Conservation issued Order No. 438-B dated August 5, 1971, establishing a unit for the well effective June 30, 1971. All the property in the unit is owned by plaintiff. The unit included a portion of plaintiff's property which is unleased *899 and amounts to 13.370 acres or 7.9689 per cent of the unit.
The costs of drilling, completing, and equipping the well were paid by Inexco. These costs were recovered by defendant from the proceeds of production from the well prior to the formation of the unit. Defendant paid plaintiff a royalty of 1/5 of the total production obtained from the L. Desormeaux No. 1 well (reserved as lessor's royalty under the Desormeaux lease) from first production of the well until June 30, 1971, the effective date of the unitization order. Defendant subsequently paid to plaintiff royalties on unit production accruing to the land covered by the mineral lease and included in the unit.
A dispute arose between the parties as to the method of calculating the amount due plaintiff from the production attributable to the unleased acreage. Inexco tendered to plaintiff a check purporting to represent the sum due to Desormeaux for his proportionate part of the unit production attributable to the unleased acreage. The check was returned to Inexco on the ground that the amount was incorrect. However, periodic reports were furnished stating the production obtained from the unit.
Plaintiff's principle demand is that his unleased acreage is entitled to share in production obtained from the well prior to the effective date of unitization, in the same manner as established by the Commissioner's order. Plaintiff argues the very basis of the forced unitization is that the unit well will effectively drain the minerals from the property within the geographical limit of the unit. The issue on plaintiff's principle demand is whether the rule of capture applies between a land owner and his lessee.
Both parties agree that the law of capture applies to tracts of land under separate ownership. Under the law of capture, the landowner is not the owner of minerals beneath the surface of his lands. He has the right to search for and draw the minerals through the soil and thereby become the owner. Frost-Johnson Lumber Company v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922); Wemple v. Nabors Oil and Gas Company et al., 154 La. 483, 97 So. 666 (1923). See also: Breaux v. Pan American Petroleum Corp., 163 So.2d 406 (La.App. 3rd Cir., 1964), and cases cited therein.
We think this law applies to the situation at hand. The landowner is not the owner of the oil and gas beneath the surface of his land. Plaintiff merely had the right to search for and reduce to possession the oil and gas beneath the land. Plaintiff has granted, under the terms of the lease to defendant, the right to search for, drill and produce oil and gas from the property covered by the lease. Under the terms of the lease production obtained through the well drilled on plaintiff's land is owned by the lessee, subject to the 1/5 royalty which was paid to plaintiff.
We are cognizant that the rule of capture has been modified in this state by the Conservation Statute, LSA-R.S. Title 30. Under the authority granted to the Commissioner of Conservation a drilling unit or units may be established for each pool for the prevention of waste and to avoid the drilling of unnecessary wells. A drilling unit is the maximum area which may be efficiently and economically drained by one well. The Commissioner is authorized to utilize geological and engineering evidence to establish the just and equitable share of the production of the unit for each tract. LSA-R.S. 30:9.
The creation of a drilling unit modifies the rule of capture only to the extent that the Commissioner's finding indicates unitization should reasonably insure each tract will receive its just and equitable share of reservoir content. Until such time as a unit is created, no other tract is entitled to production from a well. Unitization prevents the drilling of unnecessary wells to capture the oil from the reservoir.
*900 The Commissioner's findings in this case state that the available geological and engineering data indicate that the unit created around the L. Desormeaux No. 1 well for the Camerina 2 sand was reasonably productive throughout and could be efficiently and economically drained by that one well. The order forced pooled separately owned tracts and mineral leases and other property interests within the unit area with each tract sharing in the unit production in the proportion that the surface area of the tract bears to the entire surface area of the unit.
It is, therefore, clear the actual production attributable to each portion of the unit is not based on an accurate measurement of the production of oil and gas from the sands beneath the surface of the earth, but merely allows the separate tracts to share on the basis of their proportionate share of the total surface area of the unit.
The fact that plaintiff merely relies on the order of the Commissioner of Conservation shows that uncertainty of the nature of the underground strata and the limited technology with which the industry works. All these things convince us that the rule of capture must apply between the landowner and his lessee.
The trial judge decreed that plaintiff was entitled to share in the proportionate part of total unit production attributable to his unleased acreage without contributing any part of the cost of drilling or completing the unit well. Appellant attacks this judgment through LSA-R.S. 30:10 which provides in pertinent part:
"A. When two or more separately owned tracts of land are embraced within a drilling unit which has been established by the commissioner as provided in R.S. 30:9B, the owners may validly agree to pool their interests and to develop their lands as a drilling unit.
(1) Where the owners have not agreed to pool their interests, the commissioner shall require them to do so and to develop their lands as a drilling unit, if he finds it to be necessary to prevent waste or to avoid drilling unnecessary wells.

* * * * * *
(c) In the event pooling is required, the cost of development and operation of the pooled unit chargeable by the operator to the other interested owners shall be limited to the actual reasonable expenditures required for that purpose, including a charge for supervision. In the event of a dispute relative to these costs, the commissioner shall determine the proper costs, after notice to all interested persons and a hearing."
Plaintiff asserts that the statute applies only to the situation where separately owned tracts of land are involved citing the language in the first sentence. This situation is said to be concerned with a single tract of land owned by plaintiff, not separately owned tracts. Defendant asserts that although the tract of land is owned by plaintiff, it has a proprietary interest in part of the property by virtue of the mineral lease and that the conservation statute provides by definition that a party with drilling rights is considered an owner.
Defendant would also have this court take notice of the manner in which the Commissioner of Conservation has divided the costs of drilling the unit well between operators in the oil and gas industry and participants of the unit. In this court's decision on the matter of exceptions, we held at 277 So.2d 220:
"After careful reading of LSA-R.S. 30:10, subd. A(1)(c), we conclude that the statute contemplates a situation where there is a dispute as to the actual specific costs sought to be charged to the non-operator, that is, whether the costs sought to be charged by the operator are reasonable or necessary expenditures. When the statute states that "the commissioner shall determine the proper costs' it is obviously referring to the cost of development and operation of the pool *901 unit and the reasonableness thereof. Therefore, the Commissioner only has the fact-finding authority to determine the amount of reasonable and proper costs. He has no authority to determine how costs are to be apportioned or what effect his orders have on pre-existing contractual or legal relationships. Monsanto Chemical Company v. Southern Natural Gas Company, 234 La. 939, 102 So.2d 223 (1958); O'Meara v. Union Oil Company of California, 212 La. 745, 33 So.2d 506 (1947); Anisman v. Stanolind Oil and Gas Company, 98 So.2d 603 (La.App. 2nd Cir., 1957)."
The trial court properly ignored the Commissioner's method and held that the cost of the well prior to unitization could not be charged to the landowner since these costs had been recovered from the production prior to unitization. The operators of the unit would be recovering twice, once from the production and once from the landowner.
We believe this to be a just result. Inexco drilled the well on property of plaintiff which it had under lease. The fact the unitization order included some of plaintiff's unleased acreage did not impose any additional obligation or expense on Inexco. The cost of the well had been fully recovered prior to the time of unitization. The result advanced by defendant would allow it to recover its costs twice.
Nor does the statute apply to the situation. The statute applies to separately owned tracts, not to a division of interests between the landowner and his lessee.
The final specification of error is that the judgment of the trial court ordering defendant to account for production accrued after suit was filed with interest, is beyond the relief prayed for. Plaintiff contends this is provided by Article 862 of the La. Code of Civil Procedure, and the plaintiff's petition which contains a prayer for general and equitable relief.
Under the authority of La. Code of Civil Procedure Article 862, the trial court is required to grant the relief to which the party in whose favor judgment is rendered is entitled, even though there has been no demand for such relief and there is no prayer for general and equitable relief. Without an order directing the defendant to account to plaintiff for the sums which were withheld, plaintiff would be in the same position as before suit, relying solely on the tender of a check from defendant. This adequately answers the contention of the appellant. Additionally, the trial judge was correct in decreeing legal interest was due from the date of judicial demand until paid on all sums due petitioner. Interest was prayed for in the petition as required by La.C.C.P. Art. 1921.
For the reasons assigned, the judgment of the trial court is hereby affirmed. All costs of this appeal are to be paid by the appellant.
Affirmed.