634 So.2d 902 (1993)
TEX/CON OIL AND GAS COMPANY, et al.
v.
Honorable J. Patrick BATCHELOR, Commissioner of Conservation and Assistant Secretary of Natural Resources of the State of Louisiana.
No. CA 92 2113.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
Writ Denied March 18, 1994.
*904 Michael R. Mangham, Lafayette, for Tex Con and Gas Co.
Rudolph Estess, Jr., Baton Rouge, Jack C. Caldwell, Lafayette, for Deanne Lounsberry Duhon and Freddie Paul Lounsberry.
Darryl H. Hebert, Eunice, for Herbert Thompson, Com'r of Conservation.
Robert T. Jorden, Lafayette, for Hunt Oil Co., NWM/H-1982 Ltd.
George C. Gibson, Atty., Metairie.
Before CARTER, GONZALES and WHIPPLE, JJ.
WHIPPLE, Judge.
This case is before us on appeal from a judgment of the trial court which declared that, as a matter of law, LSA-R.S. 30:10 A(2) and the custom and usage of the oil and gas industry require that the unit of production depreciated well cost method of accounting be applied to determine unit well costs and remanded the matter to the Commissioner of Conservation (Commissioner) with instructions to adjust well costs for the subject wells and units employing this method. A petition for judicial review was filed in the district court to have Office of Conservation orders 745-2 and 745-3 declared unlawful, unconstitutional or arbitrary and capricious on the basis that the method of unit well cost adjustment utilized by the Commissioner was contrary to LSA-R.S. 30:10 A(2) and the custom and usage in the oil and gas industry. For the following reasons, we reverse the judgment of the trial court and reinstate the orders of the Commissioner.

BACKGROUND FACTS
The facts of this case are not in dispute. By Order No. 745-H, effective August 25, 1987, the Commissioner created ten compulsory drilling and production units for the Middle Miogypsinoides Sand, Reservoir A, in the South Lake Arthur Field, in Jefferson Davis and Vermilion Parishes, Louisiana. Similarly, by Order No. 745-G, effective August 25, 1987, the Commissioner created ten compulsory drilling and production units for the Lower Miogypsinoides Sand, Reservoir A, in the South Lake Arthur Field. Included in these units were the Lower Miogypsinoides Sand, Reservoir A, Sand Unit J, (Lower Miogyp RA SUJ), the Middle Miogypsionoides Sand, Reservoir A, Sand Unit J (Mid Miogyp RA SUJ), and the Middle Miogypsinoides Sand, Reservoir A, Sand Unit H (Mid Miogyp RA SUH).
These units were substantially revised by the Commissioner, based on new geological information, in Order Nos. 745-G-3 and 745-H-5, both effective October 18, 1989. By Order No. 745-H-5, the Commissioner dissolved the Mid Miogyp RA SUJ and the Mid Miogyp RA SUH and simultaneously created a revised unit designated as the Mid Miogyp RA SUH, replacing both prior units. The Marceaux No. 1 well was designated as the unit well, and the Sonnier Estate No. 1 well was designated as the alternate unit well. The revision of the Mid Miogyp RA SUH had the effect of including additional tracts of land not originally included in the unit and of excluding tracts which were originally included in the unit.
By Order No. 745-G-3, the Commissioner dissolved the Lower Miogyp RA SUJ and simultaneously created a new and revised Lower Miogyp RA SUJ, which was later renamed Lower Miogyp RA SUH by Correction to Office of Conservation Order No. 745-G-3. The Boudreaux No. 1 well was the unit well for this unit. This revision also had the effect of including additional tracts of land not included in the original Lower Miogyp RA SUJ and of excluding tracts of land originally included in the unit.
Tex/Con Oil and Gas Company (Tex/Con) owned substantial interests in these units and had contributed its proportionate share of the cost of drilling of the unit wells prior to revision. As a result of the revisions, Tex/Con's interest in these units was substantially decreased.
Hunt Oil Company (Hunt) and NWM/H-1982, Ltd. (NWM/H) are also owners of interests in various oil, gas and mineral leases in these units, and as a result of the revisions of the units, their interests in the units increased. *905 The revision of the Lower Miogyp unit also had the effect of totally excluding a tract of land owned by Deanne Lounsberry Duhon and Freddie Paul Lounsberry (the Lounsberrys). The land excluded from the units was excluded because geological evidence established that it had never been productive.
Because of the revised ownership interests resulting from these unit revisions and because the unit wells involved had produced for some period of time, a dispute arose as to whether a well cost adjustment should be made between the original unit owners and the revised unit owners pursuant to LSA-R.S. 30:10 A(2).

PROCEDURAL HISTORY
On September 13, 1990, Tex/Con filed an application with the Commissioner for a determination of: (1) the reasonable actual cost of each of the three wells; (2) the depreciated cost for each well; and (3) whether a well cost adjustment should be made among the former and present owners of these units. A hearing on this application was held on April 2, 1991, before Commissioner J. Patrick Batchelor. The Commissioner rendered his decisions in Office of Conservation Order Nos. 745-2 and 745-3 on May 16, 1991, and June 7, 1991, respectively. The effective date of these orders was April 2, 1991, the date of the hearing.
In the orders, the Commissioner found that the actual reasonable cost of drilling, testing, completing and equipping the Marceaux No. 1 well was $10,297,779.00. The Commissioner further found that production prior to revision from the Marceaux No. 1 well, less severance taxes, totalled $17,168,643.00. With regard to the Sonnier Estate No. 1 well, the Commissioner concluded that the actual reasonable cost of drilling, testing, completing and equipping the well was $8,687,500.00 and that prior production from the Sonnier Estate No. 1 well, less severance taxes, was $9,409,578.00. Thus, prior production from the Mid Miogyp RA SUH exceeded unit well costs.
Regarding the Lower Miogyp RA SUH, the Commissioner likewise concluded that prior production exceeded unit well costs. The Commissioner determined that the actual reasonable cost of drilling, testing, completing and equipping the unit well was $7,204,961.00 and that monies received from prior production in the original unit, less severance taxes, was $9,799,822.00.
In determining depreciated unit well costs, the Commissioner concluded that pursuant to LSA-R.S. 30:10 and consistent with the principles enunciated in Desormeaux v. Inexco Oil Company, 298 So.2d 897 (La.App. 3rd Cir.), writ refused, 302 So.2d 37 (La.1974), the actual reasonable well cost should be reduced by the dollar amount of monies received from the prior production from the original unit, less severance taxes, a method known as the dollar-for-dollar method of depreciation. Thus, the Commissioner concluded, because monies received from production exceeded the reasonable well costs for each well, the cost chargeable by the owners of the original units to the subsequent owners of the revised units was zero.
On July 12, 1991, Tex/Con filed a petition for judicial review of the Commissioner's orders in the Nineteenth Judicial District Court. In its petition, Tex/Con requested that the trial court declare that as a matter of law, LSA-R.S. 30:10 A(2) and custom and usage in the industry required that the unit of production depreciated well cost method of accounting be applied to determine the well cost. Tex/Con also sought to have Order Nos. 745-2 and 745-3 declared unconstitutional on the basis that application of the dollar-for-dollar method constituted a taking of private property (invested well costs and profit thereon) for a public purpose without due process and just compensation.
Subsequently, Tex/Con amended its petition to add as co-parties plaintiff, Sandefer Oil & Gas, Inc. (Sandefer) and SHV Oil & Gas Company (SHV), who were co-working interest owners in the subject wells with Tex/Con. Hunt and NWM/H later intervened in the suit, alleging that they were owners of interests in various oil, gas and mineral leases located within the boundaries of the drilling and production units at issue; that they had participated in the hearings before the Commissioner; and that they *906 were aligned with the Commissioner "in resisting the plaintiffs' demands."
The Lounsberrys also intervened in this matter, alleging that since January 31, 1988, they had been unleased land owners of a portion of the Lower Miogyp Sand.[1] The Lounsberrys joined with the plaintiffs in the main demand, seeking the same relief.
On July 2, 1992, the trial court rendered oral reasons for judgment, concluding that the Commissioner was not mandated by statute or by the Desormeaux case to use the dollar-for-dollar method of accounting. The trial court further stated that it was convinced that the unit of production depreciated well cost method was the proper method to be utilized and that "to do otherwise would be an injustice." Additionally, the trial court found that, as to the Lounsberrys, "there probably was a taking without proper compensation."
On August 6, 1992, the trial court signed a judgment in favor of plaintiffs, Tex/Con, Sandefer and SHV, and intervenors/plaintiffs, the Lounsberrys, declaring that: (1) as a matter of law, LSA-R.S. 30:10 A(2) and the custom and usage of the oil and gas industry require that the unit of production depreciated well cost method of accounting be applied to determine depreciated unit well costs; (2) the Commissioner erred in finding that application of the dollar-for-dollar method to determine unit well costs was consistent with the Desormeaux case; and (3) as applied to intervenors/plaintiffs, Deanne Lounsberry Duhon and Freddie Paul Lounsberry, a well cost adjustment based on the dollar-for-dollar method would constitute a taking of property by the State without just compensation, contrary to the provisions of Article I, Section 4 of the Louisiana Constitution.
The judgment further provided that the matter was remanded to the Commissioner with instructions to adjust well costs for the subject wells by applying the unit of production depreciated well cost method. From this judgment, the Commissioner, Hunt, and NWM/H appeal.
The Commissioner designated the following assignments of error: (1) the trial court erred in ruling that the unit of production depreciated well cost method was mandated by LSA-R.S. 30:10; (2) the trial court erred in ruling that as to the Lounsberrys there was an unconstitutional taking in violation of Article I, Section 4 of the Louisiana Constitution; (3) the trial court erred in ruling that the dollar-for-dollar method of accounting was not consistent with the Desormeaux case; and (4) the trial court erred in substituting its own judgment for that of the Commissioner.
Hunt and NWM/H listed six assignments of error, alleging that the trial court erred: (A) in finding that the provisions of LSA-R.S. 30:10 A(2) in effect at the time of the issuance of the orders did not require the dollar-for-dollar method of well cost reduction; (B) in finding that the Desormeaux case was not consistent with the application for the dollar-for-dollar method as found by the Commissioner; (C) in failing to acknowledge the well-established precedent of the Commissioner in applying the dollar-for-dollar method; (D) in failing to protect the correlative rights of the revised unit owners to their just and equitable share of production without unnecessary expense as required under the Conservation Act; (E) in failing to apply the proper standard of judicial review under LSA-R.S. 30:12 and Louisiana jurisprudence; and (F) in finding that application of the dollar-for-dollar method of well cost reduction constituted an unconstitutional taking of property with regard to the individual landowner intervenors.
These assignments of error present two principal issues for review by this Court, as follows: (1) whether the Commissioner erred in applying the dollar-for-dollar method in determining whether any well cost adjustment was due under LSA-R.S. 30:10 A(2); and (2) whether the application of the dollar-for-dollar well cost reduction method constitutes an unconstitutional taking of property without just compensation.

*907 METHOD OF DEPRECIATION CONTEMPLATED BY LSA R.S. 30:10 A(2)

(Commissioner's Assignments of Error Nos. 1, 3, and 4; Hunt's Assignments of Error A-E)
Appellants contend that LSA-R.S. 30:10 A(2)(d) requires depreciation of unit well costs by the dollar-for-dollar method. Appellees, however, contend that the statute, and custom and usage in the oil and gas industry, mandate use of the unit of production depreciated well cost method.
Under the dollar-for-dollar method, well costs are reduced by the dollar amount of monies received from production prior to the unit revision, before any well cost adjustment is made between the parties. Robert T. Jorden, Unit Well Cost Adjustment in Louisiana, 38 La.Min.L.Inst. 82, 90-91 (1992). The unit of production depreciated well cost method contemplates reduction of well costs by the percentage of depletion of the unit's total recoverable reserves caused by production prior to unit revision. 38 La. Min.L.Inst. at 85.
In considering the case before us, we must address the proper standard of judicial review of a decision of the Commissioner. Judicial review of the Commissioner's orders herein was sought in the district court pursuant to LSA-R.S. 30:12. LSA-R.S. 30:12 grants the lower court the authority to reverse or modify the decision of the Commissioner if substantial rights of the appellants are prejudiced because the Commissioner's findings or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record. LSA-R.S. 30:12 B(5).
The manifest error standard of review is used in reviewing the facts found by the Commissioner, as opposed to the arbitrariness test used in reviewing conclusions and exercises of agency discretion. Amoco Production Company v. Thompson, 566 So.2d 138, 145 (La.App. 1st Cir.), writs denied, 571 So.2d 627, 628 (La.1990) (Thompson II). However, questions of law are to be determined upon judicial review with little or no deference to the decision of the administrative body. Massey v. Board of Trustees, State Employees Group Benefits Program, 500 So.2d 864, 866 (La.App. 1st Cir.1986), writ denied, 501 So.2d 775 (La.1987).
The District Court's judgment includes the following declaration:
1. As a matter of law, La.R.S. 30:10 A(2) and the custom and usage of the oil and gas industry require that the unit of production depreciated well cost method of accounting be applied to determine the depreciated unit well-cost of the MIDD MIOGYP RA SU J, MIDD MIOGYP RA SU H and LOWER MIOGYP RA SU J.
Thus, as a reviewing court, we must determine whether the trial court properly concluded that the Commissioner committed legal error in interpreting LSA-R.S. 30:10 A(2).
LSA-R.S. 30:10 A(2)(d), as amended in 1984 and effective at all times pertinent hereto, provided, in part, as follows:
Should a drilling unit be revised by order of the commissioner so as to include an additional tract or tracts, the provisions hereinabove for notice, election, and participation shall be applicable to such added tract or tracts and the owner thereof as if a unit well were being proposed by the owner who had drilled the unit well; provided that the cost of drilling, testing, completing, equipping, and operating the unit well shall be reduced to account for monies received from prior production, if any, in which said tract or tracts did not participate prior to determining the share of cost allocable to the subsequently included tract or tracts. *908 LSA-R.S. 30:10 A(2)(d) (prior to amendment by Acts 1991, No. 595 § 1) (Emphasis added).[2]
Thus, where a drilling unit is revised by order of the Commissioner to include an additional tract or tracts, the owner, who had not participated in the risk and expense of drilling the unit well, may be responsible for a share of the costs associated with drilling the well. However, pursuant to the wording of the statute, a share of these costs cannot be allocated to the newly included owners until they have been reduced to account for monies received from production prior to the unit revision.
In interpreting this statutory language, the Commissioner concluded that the phrase that costs "shall be reduced to account for monies received from prior production" contemplates that the actual reasonable well cost should be reduced by the dollar amount of monies received from prior production from the original units less severance taxes, i.e. the dollar-for-dollar method for determining actual, reasonable costs of the well.
We find, as did the Commissioner, that the wording of this statute mandated that the Commissioner apply the dollar-for-dollar method of depreciation. The statute, as it existed at the time this dispute arose, dictated that well costs "be reduced to account for monies received from prior production," phraseology which we agree clearly contemplated use of the dollar-for-dollar method of determining well costs. Nothing in the wording of the statute, in its previous form, suggested or required that well costs were to be depreciated by the percentage of recoverable reserves that had been recovered from prior production. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9; State Licensing Board for Contractors v. Louisiana State Department of Agriculture and Forestry, 588 So.2d 1268, 1272 (La.App. 1st Cir. 1991), writ denied, 590 So.2d 598 (La.1992). Thus, under the clear wording of the statute, the Commissioner was required to use the dollar-for-dollar method in determining depreciated well costs.
Moreover, LSA-R.S. 30:10 A(2)(d) was amended in 1991, to change the phrase "shall be reduced to account for monies received from prior production" to "shall be reduced in the same proportion as the recoverable reserves in the unitized pool have been recovered by prior production." This amendment evidences a clear change in the method of determining well costs to a unit of production well cost reduction method and provides further support for the conclusion that prior to this 1991 amendment, LSA-R.S. 30:12 A(2)(d) mandated the use of the dollar-for-dollar method.
Furthermore, we find no merit to appellees' argument that LSA-R.S. 30:10 A(2)(f) mandates use of the unit of production depreciated well cost method. Subsection (f) provides that: "[i]n the event of a dispute relative to the calculation of unit well costs or depreciated unit well costs, the commissioner shall determine the proper costs after notice to all interested owners and a public hearing thereon."
Appellees contend that the use of the word "depreciated" in this subsection mandates use of the unit of production depreciated well *909 cost method. However, appellees' reliance on this portion of the statute is misplaced. This subsection merely authorizes the Commissioner, in the event of a dispute, to conduct a hearing in order to determine the actual reasonable well cost amount or the depreciated well cost amount after notice to all interested owners where a well cost adjustment may be warranted. The method by which the Commissioner is to determine the well cost amount is set forth in LSA-R.S. 30:10 A(2)(d). "Depreciate" is defined simply as "to lessen the value or price of." Webster's II New Riverside University Dictionary (1984). The dollar-for-dollar method as set forth in LSA-R.S. 30:10 A(2)(d) is a method of calculating depreciated well costs, as this method reduces or lessens the amount of well costs which may be recovered from new unit owners by each dollar received from a prior production. Thus, we must conclude that the trial court, and not the Commissioner, erred as a matter of law in interpreting this statute.
Alternatively, even if we were to conclude that LSA-R.S. 30:10 A(2)(d) did not clearly provide for the dollar-for-dollar method, we could not conclude that its wording mandated use of the unit of production method of depreciation. Thus, there would have been no specific method of depreciation provided for in the statute to be applied by the Commissioner in exercising his or her authority under subsection (f) to determine depreciated well costs. Determining a method of depreciation to apply where none was set forth in the statute would constitute an exercise of the Commissioner's administrative discretion. As such, the Commissioner's use of the dollar-for-dollar method in determining depreciated well cost could not be reversed in the absence of a finding that he acted arbitrarily and capriciously. Thompson II, 566 So.2d at 145.
The Commissioner has the authority to issue any order necessary to properly administer and enforce the requirement that the owner of each tract be given the opportunity to recover or receive his just and equitable share of oil and gas in the pool without unnecessary expense. LSA-R.S. 30:4(C) and 30:10 A(1)(a); Amoco Production Company v. Thompson, 516 So.2d 376, 394 (La.App. 1st Cir.1987), writs denied, 520 So.2d 118 (La. 1988) (Thompson I).
In 1974, the Third Circuit Court of Appeal addressed the issue of well cost adjustment in Desormeaux v. Inexco Oil Company, 298 So.2d 897 (La.App. 3rd Cir.), writ denied, 302 So.2d 37 (La.1974). In the Desormeaux case, defendant, Inexco Oil Company, completed a well on land which it had leased from plaintiff. Subsequently, the Commissioner established a drilling unit for the well which included a portion of plaintiff's property which was unleased. Prior to the Commissioner's formation of the unit, the cost of drilling, completing and equipping the well had been recovered by Inexco from the proceeds of pre-unit production. Plaintiff asserted that because well costs had been recovered prior to his unleased tract being included in the unit, he should not be required to contribute to the cost of drilling or completing the well. The trial court agreed, concluding that plaintiff was entitled to share in the proportionate part of total unit production attributable to his unleased tract without contributing to the cost of drilling or completing the well. Desormeaux, 298 So.2d at 898, 900.
In affirming the decision of the trial court, the Third Circuit stated:
The trial court properly ignored the Commissioner's method and held that the cost of the well prior to unitization could not be charged to the landowner since these costs had been recovered from the production prior to unitization. The operators of the unit would be recovering twice, once from the production and once from the landowner.
We believe this to be a just result. Inexco drilled the well on property of plaintiff which it had under lease. The fact the unitization order included some of plaintiff's unleased acreage did not impose any additional obligation or expense on Inexco. The cost of the well had been fully recovered prior to the time of unitization. The result advanced by defendant would allow it to recover its costs twice.
Desormeaux, 298 So.2d at 901 (Emphasis added).
*910 More recently, in Acadienergy, Inc. v. McCord Exploration Company, 596 So.2d 1334 (La.App. 3rd Cir.1992), the Third Circuit addressed the issue of well cost adjustment among various owners within a unit. Although the case involved interpretation of a contract providing for well cost adjustment, the court noted that "it would be clearly inequitable to have well cost adjustments based on subsequent revisions of the unit, after all the drilling costs have already been paid out of production, when there is no provision to also adjust the production payments received by the parties based on subsequent revisions of the unit." Acadienergy, 596 So.2d at 1341.
In the instant case, the tracts which were excluded from the units upon revision were excluded based on the determination that the tracts had never been productive. Moreover, the production prior to revision, which paid for the unit wells, was in fact derived in part from acreage which had not been included in the unit prior to revision, and thus, which had not participated in revenues received from such production.
Considering the facts of the instant case, we must conclude that even if LSA-R.S. 30:10 A(2)(d) did not specifically mandate that the Commissioner apply the dollar-for-dollar method, his application of this method of depreciation was consistent with the Desormeaux case and was not arbitrary or capricious. Otherwise, the original unit owners would have recovered the cost of the unit wells once, from production, and again, in part, from the new unit owners, while the new unit owners would not be allowed to share in monies received from prior production.
Moreover, we conclude that the Commissioner was legally correct in his interpretation of LSA-R.S. 30:10 A(2)(d) as mandating that he apply the dollar-for-dollar method in determining whether an adjustment was owed for unit well costs. The trial court erred in concluding that the statute provided otherwise. Alternatively, even if the statute did not provide for a specific method of depreciation, the trial court's conclusions that "the depreciated well cost analysis is the proper method to utilize" and that "[t]o do otherwise would be an injustice" constituted an erroneous substitution of its judgment for that of the Commissioner, when the Commissioner's actions were neither arbitrary nor capricious. Thompson II, 566 So.2d at 145.

CONSTITUTIONALITY OF THE DOLLAR-FOR-DOLLAR METHOD OF CALCULATING WELL COSTS

(Commissioner's Assignment of Error No. 2 and Hunt's Assignment of Error F)
Appellants also challenge the trial court's finding that as applied to the Lounsberrys, the dollar-for-dollar method constituted a taking of property by the state without just compensation. La. Const. art. I, § 4 provides, in pertinent part, that: "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit." The property rights claimed to have been taken were "invested well costs and profit thereon."
While ownership of land does not include ownership of oil, gas or other minerals occurring naturally below the surface, ownership of land does confer upon the owner the right to explore for and reduce to possession the oil and gas beneath his land. LSA-R.S. 31:6; Thompson I, 516 So.2d at 385. However, pursuant to La. Const. art. I, § 4, this right is "subject to reasonable statutory restrictions and the reasonable exercise of the police power." Nunez v. Wainoco Oil & Gas Company, 488 So.2d 955, 962 (La.), cert. denied, 479 U.S. 925, 107 S.Ct. 391, 93 L.Ed.2d 345 (1986). Owners of a common reservoir have correlative rights and duties. An owner of rights in a common reservoir may not use his rights to deprive another, either intentionally or negligently, of enjoying correlative rights or to intentionally or negligently cause damage to the other's correlative rights. LSA-R.S. 31:9, 10; Thompson II, 566 So.2d at 146.
Unitization is the device employed by the Commissioner to protect the correlative rights of surface owners in a common reservoir. Nunez, 488 So.2d at 963. Each owner in a compulsory unit is entitled to the *911 "opportunity to recover or receive his just and equitable share of the oil and gas in the pool without unnecessary expense." LSA-R.S. 30:10 A(1)(a) (emphasis added). "Just and equitable share" is defined as "that part of the authorized production of the pool ... which is substantially in the proportion that the quantity of recoverable oil and gas in the developed area of his tract or tracts in the pool bears to the recoverable oil and gas in the total developed area of the pool...." LSA-R.S. 30:9 D.
Revision of a unit is another method by which the Commissioner protects the correlative rights of landowners having an interest in a common reservoir. Revision of units protects the rights of owners by attempting to define the unit in terms of productivity of land. Otherwise, owners of land newly added to a unit by revision would have no opportunity to recover their just and equitable share of production from the common reservoir. See Monsanto Chemical Company v. Hussey, 102 So.2d 455 (La.1958). Once the unit is revised, the owners of the newly included tracts are allowed to participate in revenues received from production and may in return have to contribute to well costs.
Under the dollar-for-dollar method, if the unit well costs have been satisfied from production prior to revision, the newly included owners, who did not participate in prior revenues derived in part from drainage of their acreage, likewise would not be obligated for well costs paid from those prior revenues. Similarly, owners of land included in the original unit but excluded by revision, due to the unproductive nature of their land, may not recover from the new owners well costs which they have already recovered from prior production. Under these circumstances, the dollar-for-dollar method of calculating whether a well cost adjustment is due has the effect of protecting newly included owners, who have no right to be compensated for revenues received from prior production derived from their land, by allowing them to recover their just and equitable share of production "without unnecessary expense."
Thus, we conclude that in the absence of a statutory prohibition, the dollar-for-dollar method of determining well costs was a reasonable method to equitably distribute among surface proprietors the right to participate in their just and equitable share of production without unreasonable expense. Accordingly, the trial court erred in finding that use of the dollar-for-dollar method as applied to the Lounsberrys, who recouped their well costs from production prior to revision (and in fact, shared in substantial profits), was an unconstitutional taking without just compensation.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court and reinstate Order Nos. 745-2 and 745-3 of the Commissioner of Conservation. Costs of this appeal are assessed against appellees, Tex/Con Oil Gas Company, Sandefer Oil and Gas Company, Inc., SHV Oil & Gas Company, Inc. and Deanne Lounsberry Duhon and Freddie Paul Lounsberry.
REVERSED.
CARTER, J., concurs.
NOTES
[1] The exact portion of the Lounsberrys' interest in the Lower Miogyp which has been unleased since January 31, 1988, has not yet been determinatively established. See Sandefer Oil & Gas, Inc. v. Duhon, 961 F.2d 1207 (5th Cir.1992).
[2] LSA-R.S. 30:10 A(2)(d) was amended in 1991 to provide as follows:

(d)(i) Should a drilling unit be revised by order of the commissioner so as to include an additional tract or tracts, the provisions hereinabove for notice, election, and participation shall be applicable to such added tract or tracts and the owner thereof as if a unit well were being proposed by the owner who had drilled the unit well; however, the cost of drilling, testing, completing, equipping, and operating the unit well shall be reduced in the same proportion as the recoverable reserves in the unitized pool have been recovered by prior production, if any, in which said tract or tracts did not participate prior to determining the share of cost allocable to the subsequently included tract or tracts.
(ii) Should a drilling unit be revised by order of the commissioner as to exclude a tract or tracts, the cost of drilling, testing, completing, equipping, and operating the unit well shall be reduced in the same proportion as the recoverable reserves in the unitized pool have been recovered by prior production to determine the share of cost allocable to the subsequently excluded tract or tracts.