**EAGLE LAKE ESTATES, L.L.C. Ray Robert Grezaffi and Debra Ann Grezaffi Tillery**

v.

**CABOT OIL & GAS CORPORATION**

No. Civ.A. 04–169.

United States District Court, E.D. Louisiana.

Aug. 11, 2004.

James Patrick Magee, Frederick W. Veters, Alexis P. Basilevsky, Baldwin & Haspel, LLC, New Orleans, LA, for Plaintiffs.

John Mason McCollam, Matthew J. Randazzo, III, Aimee Williams Hebert, Gordon, Arata, McCollam, Duplantis & Eagan LLP, New Orleans, LA, for Defendant.

### ORDER AND REASONS

BARBIER, District Judge.

Before the Court is defendant's **Motion to Dismiss** pursuant to Federal Rule of Civil Procedure 12(b)(6). Rec. Doc. 14. Alternatively, defendant requests dismissal of any claims for remedies to which plaintiffs are not entitled under Louisiana law. Plaintiffs oppose the motion. The motion was heard on July 14, 2004, at which point the Court took the matter under advisement. Now, having reviewed the record, the memoranda of counsel, and applicable law, the Court finds that the defendant's motion should be DENIED in part and GRANTED in part.

### FACTUAL AND PROCEDURAL BACKGROUND

In January of 2002, plaintiffs granted two mineral leases covering an area in the Willow Woods Field in Terrebonne Parish, Louisiana. On August 19, 2002 these leases were assigned to defendant, Cabot Oil & Gas Corporation (Cabot). Defendant also owns a mineral lease (Ellender Lease) covering land adjacent to plaintiffs' leases. On March 16, 2003, defendant completed a gas and condensate well (Subject Well) located on the Ellender Lease and began production. From this point until unitization, plaintiffs allege to have made numerous requests for information concerning the Subject Well. According to plaintiffs, defendant ignored their requests for information and delayed unitization in order to secure unleased land likely to be included in the unit at a lower cost.

On May 23, 2003 a number of oil, gas and mineral leases in the area of the potential unit were granted to SunCoast Land Services, Inc. (SunCoast). These leases were assigned to defendant on January 19, 2004. On June 9, 2003, approximately three months after beginning production, defendant initiated the unitization process. The Louisiana Commissioner of Conservation granted defendant's request and the Subject Well was unitized by Order 390–A–1, effective on and after August 16, 2003. Plaintiffs did not receive royalties from Subject Well production until the effective date of unitization. On October 16, 2003, plaintiffs sent defendant a letter asserting that plaintiffs should have received royalties from the first date of production from the Subject Well. Plaintiffs also asserted that defendant breached

their leases by failing to protect them from drainage until the Subject Well was unitized.

Plaintiffs, Eagle Lake Estates, L.L.C., Ray Robert Grezaffi, and Debra Tillery, claim defendant breached their mineral leases by failing to protect them from drainage during the period after production had begun, but before unitization proceedings had been initiated. Plaintiffs seek damages, double the amount of royalties due from the first date of production, interest on the sum of royalties due, and attorney's fees. The action was originally filed in the 32nd Judicial District Court on January 2, 2004. On January 21, 2004, defendant removed the matter to federal court on the basis of diversity jurisdiction. This Court then granted plaintiffs' leave to file a supplemental complaint. Plaintiffs filed a supplemental complaint seeking dissolution of the plaintiffs' leases as an additional remedy.

## STANDARD OF REVIEW

The Court will dismiss a plaintiffs' complaint for failure to state a claim under Rule 12(b)(6) if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995) (citations omitted).[1] In making this determination, "the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir.2002) (citations omitted).

## DISCUSSION

Defendant argues that plaintiffs' complaint should be dismissed because it: (1) constitutes a prohibited collateral attack on an order of the Louisiana Commissioner of Conservation; (2) requests remedies that are not available to plaintiffs under Louisiana law; and (3) is based upon a drainage claim that was mooted by the unitization. Each issue is discussed below in turn.

### 1. Plaintiffs' Claim is Not a Prohibited Collateral Attack

Under Louisiana Revised Statute 30:12, an order of the Louisiana Commissioner of Conservation may only be set aside by direct action against the Commissioner. Courts have interpreted this statute to mean that where an order of the Commissioner of Conservation is "an operative fact upon which the determination of the parties' respective rights directly depend" the action must be brought directly against the Commissioner. *Trahan v. Superior Oil Co.*, 700 F.2d 1004 (5th Cir.1983). This collateral attack rule has been rather broadly construed to include instances in which the alleged misconduct is by another party, but somehow involves an order of the Commissioner. For instance, a claim that defendant failed to properly represent plaintiffs before the Office of Conservation (by neglecting to present geologic surveys) was considered a collateral attack and the motion was dismissed. *Id* at 1015. Similarly, in *Pierce v. Goldking Properties*, 396 So.2d 528 (La.App. 3rd Cir.1981), the court held that a claim that the lessee had breached its contractual obligations by failing to request an earlier effective date of unitization constitutes a prohibited collateral attack.

1. On July 20, 2004, the Court entered an order suggesting that it might convert the pending motion to one for summary judgment if it could not be resolved without reference to documents outside the pleadings and invited counsel to make any additional submissions in light of this. However, the Court has resolved the motion without reference to any documents outside the pleadings, except for the Commissioner's directive of which it may take judicial notice, so the motion has been resolved under 12(b)(6).

### Arguments of the Parties

In the instant case, defendant argues that plaintiffs' claim is a collateral attack on an Order of the Commissioner of Conservation, analogizing the facts of this case to *Trahan* and *Goldking*. Defendant contends that by seeking royalties from the Subject Well's first date of production, plaintiffs are in effect seeking retroactive application of the Commissioner's Order. The contention is that because a claim challenging the effective date of unitization was determined to be a collateral attack in *Goldking*, any claim that would yield similar relief must also be a collateral attack. *Id.* Defendant also attempts to analogize the current situation to *Trahan*, in which a claim by a lessor that it was improperly represented by its lessee before the Commissioner of Conservation was held to be a collateral attack. 700 F.2d 1004. In making this analogy, defendant argues that plaintiffs' underlying assertion is that the Order would have had an earlier effective date if Cabot had fairly represented their interests before the Office of Conservation.

In contrast, plaintiffs assert that the collateral attack rule is inapplicable to the instant matter because the terms of the Commissioner's Order are entirely irrelevant to their cause of action. According to plaintiffs, if defendant had acted as a prudent operator as required by La. R.S. 31:122, it would have begun proceedings for unitization earlier so as to protect them from an extended period of uncompensated drainage. Plaintiffs claim not to take issue with any aspect of the unitization order, but only with the defendant's delay in applying for the order. Citing *Trahan*, plaintiffs argue that the collateral attack rule is not applicable because an "order of the Commissioner is not an operative fact upon which the determination of the parties respective rights directly depends." 700 F.2d at 1015–16. Plaintiffs further argue that *Trahan* recognizes the collateral attack rule is inapplicable to claims like their own, which involve a failure on the part of a lessee to bring an issue before the Commissioner. *Id.* at 1020–21.

### Applicable Law

 A lessor is not entitled to royalties for minerals extracted from beneath his land prior to unitization. *Pierce*, 396 So.2d at 533. This is true because under Louisiana's "rule of capture," a landowner does not own the minerals underlying his land but instead has the right to explore for minerals and then becomes the owner thereof only after the minerals have been reduced to possession. *Desormeaux v. Inexco Oil Co.*, 298 So.2d 897 (La.App. 3rd Cir.1974). However, it is also true that "the mineral lessee who is leasing adjacent tracts and is producing oil or gas from a well on one tract that drains the other has a duty to act as a prudent administrator in order to protect the owner of the tract being drained by taking such steps as a prudent administrator would take under the circumstances then prevailing." *Williams v. Humble Oil & Refining Co.*, 432 F.2d 165, 172 (5th Cir.1970); see also, *Breaux v. Pan Am. Petroleum Corp.*, 163 So.2d 406, 409 (La.App. 3rd Cir.1964) (there is an implied obligation on the part of the lessee to exercise reasonable diligence in endeavouring to prevent drainage of oil and gas from under the leased premises); La.Rev.Stat. 31:136. "Whether on a particular set of facts the lessee has breached his duty is a question for the trier of fact." *Williams*, 432 F.2d at 172–73.

 Where drainage has occurred, the landowner's remedy is an action against the lessee for damages or cancellation of the lease for breach of his implied obligation to protect against drainage. *Id* at 172. The Fifth Circuit has recognized that such an action for damages can be predicated as much upon the lessee's fail-

ure to seek unitization as upon the more commonplace failure to drill offset wells or completions. *Id.* Thus, where a lessee's failure to unitize is incompatible with the "prudent administrator" standard, damages are a proper remedy. *Id.* While drainage perpetrated by a lessee may be remedied by damages or lease dissolution, courts have recognized that a short period between beginning production and unitization during which a lessor does not receive royalties is acceptable and non-compensable. *See Pierce* 396 So.2d at 534, citing *Desormeaux v. Inexco Oil Co.,* 298 So.2d 897.

■ In the instant case, the parties do not seriously dispute that drainage occurred—that is, that during the period between the Subject Well being placed in operation, and the effective date of unitization (including a period between first production and the pre-application for unitization), minerals were captured from beneath plaintiffs' property. Nor is there any disagreement that in ordinary circumstances, under the "rule of capture" plaintiffs would not be entitled to compensation for those minerals, because their extraction was pre-unitization. The parties' disagreement arises from their different understandings of what the prudent operator standard entails and when it applies. Plaintiffs assert that a prudent operator would have initiated the unitization process earlier, thus limiting the period of drainage; whereas defendant would exempt itself from such a duty based on plaintiffs' failure to take action themselves. Defendant argues that plaintiffs could have requested the Commissioner to grant an earlier effective date of unitization at the unitization hearing, or that plaintiffs could have initiated the unitization process themselves at an earlier date. The distinction between these two charac-

terizations of plaintiffs' claims is significant because adopting the defendant's view leads to the conclusion that plaintiffs' claims are essentially an impermissible attack (collateral or direct) on the Commissioner's ruling, which established an effective date of August 16, 2003.

The Court finds that plaintiffs have the better end of this argument for several reasons. The most obvious of these is that the portion of the Commissioner's order that movant alleges is being attacked—the effective date—is not an operative fact upon which the claim depends. Instead, it appears that this matter may be resolved without any reference whatsoever to the effective date of the Commissioner's order. Since the source of plaintiffs' grievance is the length of time it took defendant to initiate the pre-application process, and it is beyond cavil that a lessor is not entitled to pre-unitization royalties, it may well be the case that the time period in question for purposes of calculating damages, if liability is proved, is the period commencing when defendant should have initiated the unitization process and when it actually did—which, of course, has no relationship to the effective date of unitization.

■ Moreover, with respect to the contention that plaintiffs could have and should have requested an earlier effective date, the Court finds that they could not have done so. First, there is currently in place a directive from the Commissioner mandating that

> [o]rders issued by the Commissioner . . . shall be effective only after testimony is received and entered of record. Hence, **no Order will be given an effective date earlier than the date that all evidence has been received and the hearing concluded.**

Commissioner's Directive of Aug. 20, 1985, Rec. Doc. 21, Exh. B.[2] Second, as other

2. The Court takes judicial notice of the directive pursuant to Federal Rule of Evidence

commentators have observed, making the effective date of a unitization order retroactive is antagonistic to the principles of Louisiana's mineral law. *See* Stephen Schilde Williams, Comment, *Can A Louisiana Unit Order Be Effective Retroactively?*, 49 La. L.Rev. 1119 (1989). This is because under Louisiana's theory of mineral ownership, making an order effective retroactively may be viewed as taking the property of one individual and giving it to another, since it requires an individual or entity who has reduced minerals to his possession during the period prior to unitization (and to which he is entitled under the law) to share those minerals (or the proceeds therefrom) with an individual or entity not otherwise entitled to them. *Id.* Thus, plaintiffs had no valid legal basis to request a retroactive effective date, so their failure to do so cannot operate as an estoppel barring the instant suit, which does not seek the transfer to them of royalties previously paid to another for minerals that the other extracted and reduced to ownership (which would be the result of a retroactive unitization order); but rather damages for an alleged breach of the lessee's duty to act as a responsible administrator. Accordingly, the defendant's argument that "[t]he Commissioner could have provided that the unit order was effective as of the date of first production, but he did not," is without merit. Reply to Opp., Rec. Doc. 20, 3.

The cases relied upon by the defendant in arguing that the matter before the Court constitutes a collateral attack are distinguishable. In the principal case relied upon by defendant, *Pierce v. Goldking,* the Court noted that "plaintiff alleges that Goldking breached its obligation to the plaintiff by failing to request that the effective date of the unit be the date of the

public hearing, specifically April 8, 1975, rather than May 1, 1975, the date selected by the Commissioner," and found that "[p]laintiff's contention constitute[d] a collateral attack on an order issued by the Commissioner of Conservation which is prohibited." 396 So.2d at 534. However, in the instant case, **plaintiffs have not alleged that Cabot breached its obligation by failing to request an earlier effective date**; plaintiffs have alleged that Cabot breached its obligation by failing to initiate the unitization process sooner. Additionally, the *Pierce* court specifically opined:

> We do not mean to imply by this decision that the remedy of damages and dissolution is not potentially available to the lessor of a lease which has not been adequately protected by the lessee from uncompensated drainage. However, we conclude that **under the facts of the instant case, the defendant acted as a reasonably prudent operator and with all due diligence in its efforts to protect the leased premises.**

*Id.* at 533.

In the instant case, plaintiffs have specifically pled that the defendant did not act as a reasonably prudent operator to protect the leased premises from uncompensated drainage. Thus, the *Pierce* case actually demonstrates the viability of plaintiffs' claim. *Pierce* is additionally distinguishable from the case at bar in that in *Pierce,* the plaintiff sought compensation for drainage that occurred after the unitization procedure had begun, whereas the damages plaintiffs herein seek occurred prior to the application for unitization.

*Trahan* is also distinguishable, because that case was based on plaintiff's claim that the defendant had not fairly repre-

201; see also *Higgins v. Capitol Credit Services, Inc.,* 762 F.Supp. 1128, 1137 (D.Del. 1991).

sented the plaintiff's interests at the unitization hearing, due to defendant's failure to fairly present certain geological and engineering information which it had obtained. 700 F.2d at 1014. However, as previously emphasized, plaintiffs herein take no issue with any conduct at the hearing, but rather with defendant's actions and resulting drainage that occurred before the Commissioner issued an order and even before application for unitization was made. In addition, the *Trahan* court specifically noted that "[t]he collateral attack doctrine does not come into play unless there is an actual order of the Commissioner which in fact deals with the particular subject matter at issue...." *Id.* at 1020–21. As noted above, the Commissioner's order in this case does not deal with subject matter placed in issue by plaintiffs' complaint.

■ Plaintiffs' failure to seek unitization themselves in no way bars them from bringing this claim. Although any party involved in the unit can apply for unitization, **it is the duty of the lessee to do so**. In most situations the lessee has superior and exclusive knowledge that make it, as a prudent administrator, the appropriate party to undertake unitization, and in this case, plaintiffs have specifically alleged that defendants failed to provide them with production information, which they argue resulted in their simply not being in a position to initiate unitization. Notably, the Fifth Circuit has observed that "the prudent administrator should perhaps disclose the fact of drainage to the lessor so that he may apply to the Louisiana Commissioner of Conservation for the establishment of a drilling unit. In appropriate circumstances failure to make a full disclosure may provide the basis for a cause of action for damages." *Williams,* 432 F.2d at 173.

In sum, the Court finds that plaintiffs' claim is not an impermissible collateral attack, because it seeks damages for alleged pre-application nonfeasance, not as a result of unfair or inadequate representation at the unitization hearing. The effective date is not an operative fact, and plaintiffs' claim may well be resolved with no reference to that date. Further, the Court notes that one sure means of ascertaining that the Commissioner's order is not being attacked, collaterally or otherwise, is to consider whether the Commissioner could have granted the plaintiffs the relief they seek. That question must be answered in the negative. While defendant suggests that the Commissioner could have provided such relief by making his unitization order retroactive, under prevailing law and practice standards that was not an option. Accordingly, defendants argument that plaintiffs' claim constitutes an impermissible collateral attack is without merit and is not grounds for dismissal.

### 2. Royalties Are Not Available to Plaintiffs Under Louisiana Law

■ Article 140 of the Mineral Code states that a court may award double damages, interest, attorneys' fees and lease dissolution as compensation where a lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice. Plaintiffs assert they are entitled to the damages set out in Article 140, because they seek as damages the royalties they would have received had defendant initiated unitization in what plaintiffs consider a timely fashion. However, as the foregoing discussion on the collateral attack issue makes clear, plaintiffs are not seeking actual royalties (which is what they would receive if their complaint sought a retroactive effective date, and such a remedy was legally feasible). Plaintiffs cannot claim royalties from preunitization production even if they are later made part of the unit. *Pierce,* 396 So.2d at 534. Rather,

plaintiffs are suing for damages which were incurred due to drainage during the period in which defendant allegedly delayed in filing its pre-application notice. Claims for damages resulting from drainage, such as those of plaintiffs herein, fall under Article 136, which provides for damages or dissolution of the lease as remedies. La.Rev.Stat. 31:136. Accordingly, the plaintiffs' recovery is limited to the remedies set out in Article 136 of the Mineral Code—damages or lease dissolution. *Id.*

### 3. Plaintiffs' Drainage Claim is not Mooted by Unitization

 In order to recover under Article 136 of the Mineral Code, a plaintiff must give his lessee "written notice of the asserted breach to perform and allow a reasonable time for performance by the lessee as a prerequisite to a judicial demand for damages or dissolution of the lease." *Id.* Defendant argues that plaintiffs' claim is barred as moot, because by the time written notice of the claim was received, the alleged drainage had already been remedied by the Commissioner's unitization order, making the demand for protection from drainage moot, and extinguishing the right to make a claim for damages or lease dissolution.[3]

If the harm complained of was in fact remedied by unitization, this argument might be convincing; however, unitization did not remedy the situation because unitization did not compensate for plaintiffs' alleged past harm, it only protected against future harm. Further, as Article 136 demands, plaintiffs' letter of October 16, 2003 placed the defendant on notice and gave the defendant a reasonable time to remedy the situation (i.e., compensate

plaintiffs' drainage during the alleged delay period) or supply an explanation. Notwithstanding the fact that unitization had occurred prior to plaintiffs' statutory notice letter, upon receipt of the letter, defendant was made aware of alleged damages not cured by unitization, knew of the potential for litigation stemming from the alleged breach, and allegedly failed to act to remedy the situation by explaining its actions, through payment of damages for drainage, or by any other suitable means. The Court also agrees with Judge Wisdom's conclusion in the *Williams* case, that

> [i]n the ordinary drainage action notice to the lessee would be superfluous. The harm has already been committed, and no action by the lessee to repair the breach could adversely affect the lessor's right to compensation for past harm. In many cases the fact of injury is already known to the lessee, who has superior knowledge of his own operations, long before it becomes known to the lessor. The lessor's inability to give notice of that which he does not know should not in all fairness bar him forever from recovery for damages already incurred

432 F.2d at 180–81.

Considering the foregoing, the Court finds that with the exception of plaintiffs' claim under Article 140, defendant has failed to demonstrate that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. Accordingly,

**IT IS ORDERED** that defendant's **Motion to Dismiss** (Rec.Doc. 14) should be and is hereby **GRANTED in part** and plaintiffs' claim for damages under Article 140 of the Mineral Code is **DISMISSED**;

---

**3.** Reference to plaintiffs' statutory demand letter did not mandate conversion of the motion to dismiss to a motion for summary judgment because plaintiffs specifically alleged that the letter seeking damages for drainage was sent to defendant. Petition, ¶ 21. For purposes of this motion the Court accepts this allegation as true.

in all other respects, the motion is **DENIED**.