709 So.2d 824 (1998)
YUMA PETROLEUM COMPANY
v.
The Honorable Herbert W. THOMPSON, Commissioner of Conservation and Assistant Secretary of Conservation of the State of Louisiana.
No. 96 CA 1840.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
Rehearing Denied April 22, 1998.
*825 John Y. Pearce, III, New Orleans, for Plaintiff/Appellant Yuma Petroleum Company.
W. Stephen Walker, Baton Rouge, for Defendant/Appellee Ernest A. Burguieres (Successor of Herbert Thompson), Commissioner of Conservation and Assistant Secretary, Department of Natural Resources, State of Louisiana.
Before CARTER, LeBLANC, FOIL, WHIPPLE and PARRO, JJ.
LeBLANC, Judge.
Yuma Petroleum Company (Yuma) appeals from a district court judgment which affirmed an order of the Louisiana Commissioner of Conservation and Assistant Secretary, Office of Conservation of the State of Louisiana (Commissioner), ordering Yuma to investigate and submit for approval a plan to remediate a contaminated oilfield site.

FACTS AND PROCEDURAL HISTORY
Yuma, by instrument effective November 1, 1990, is the record owner of an oil, gas and mineral lease of property located in St. Martin Parish. Before that time, the lease had *826 been owned by several others, including Oil Lift, Inc. (Oil Lift). On November 8, 1990, employees of the Department of Environmental Quality conducted an inspection of the property at issue and on April 25, 1991, two compliance orders were issued.
Compliance Order No. WE-C-91-0021, directed to Oil Lift, found numerous illegal discharges, destroyed vegetation, and an abandoned production pit that was not properly closed. Oil Lift was ordered to cease all unauthorized discharges and submit a report detailing corrective or remedial action taken by Oil Lift. Compliance Order No. WE-C-91-0020, directed to Yuma, also found numerous illegal discharges, destroyed vegetation, and an abandoned production pit. Yuma was ordered to cease all unauthorized discharges, clean up all discharges, prepare and implement a Spill Prevention and Control Plan, close all pits and submit a report detailing remedial action taken by Yuma.
On July 30, September 15, and November 16, 1993, Yuma requested the Commissioner hold a public hearing to address several issues, including the responsibility of the previous lease owners to Yuma or the Commissioner for site restoration and remediation costs. On October 21, 1993, the Commissioner issued Compliance Order No. E-I & E-93-206, directed to Yuma, which found contamination at the site and again ordered Yuma to conduct an investigation of the site to determine the extent of contamination and to submit a plan to remediate the site. Yuma and the Commissioner entered into a stipulation which formed a part of the administrative record and, after consideration of the record, the Commissioner issued Order No. 170-6, finding Yuma the "owner" of the property at issue and affirming Compliance Order No. E-I & E-93-206, directing Yuma to submit a remediation plan. Yuma's request for a rehearing was denied. Yuma then sought judicial review of the Commissioner's order. The trial court adopted and affirmed the Commissioner's ruling, finding Yuma the "owner" and responsible for site remediation. Yuma appeals, raising the following issues: 1) the failure of the Commissioner and the trial court to issue written reasons; 2) the failure of the Commissioner to hold a hearing; and 3) the failure of the Commissioner to apply the correct statute.

I.
Yuma asserts the Commissioner and the trial court erred in failing to issue written reasons.
La. R.S. 49:958 provides, in pertinent part, "[a] final decision or order adverse to a party in an adjudication proceeding shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law." Yuma argues the Commissioner's order fails to contain meaningful "findings of fact" or "conclusions of law." The Supreme Court in Allen v. Louisiana State Board of Dentistry, 543 So.2d 908, 913 (La.1989), commenting on the requirements of La. R.S. 49:958, stated, "[a]ll the committee needed to do was articulate, in its own words, the reasons for its conclusions."
Order No. 170-6, issued by the Commissioner, is expressly based on the stipulations prepared by Yuma and entered into between Yuma and the Commissioner. In addition, the order implicitly finds Yuma to be the "owner" of the subject lease, in that the order addresses the order to Yuma as the "owner" of the subject lease. We find the Commissioner's findings of fact and conclusions of law are easily discernible from the issued order. The order includes "Findings" and incorporates the stipulations prepared by Yuma. Moreover, the order concludes by finding Yuma the "owner" of the lease, the fundamental determination with which Yuma takes issue. The order adequately complies with La. R.S. 49:958.
Yuma also argues the trial court erred in failing to issue written reasons. La. C.C.P. art.1917 provides, in pertinent part, "the court when requested to do so by a party shall give in writing its findings of fact and reasons for judgment, provided the request is made not later than ten days after the signing of the judgment." Judgment was signed on April 30, 1996. On May 10, 1996, Yuma requested written findings of fact and reasons for judgment. The record does not contain written findings of fact or reasons for judgment.
*827 When a trial judge fails to comply with a timely request for written findings of fact and reasons for judgment pursuant to La. C.C.P. art.1917, the proper remedy for the aggrieved party is to apply for supervisory writs or move for a remand for the purpose of requiring or affording the trial judge an opportunity to comply with the request. Brocato v. Brocato, 369 So.2d 1083, 1085 (La.App. 1st Cir.), writ denied, 371 So.2d 1341 (1979); Seymour v. Seymour, 423 So.2d 770, 775 (La.App. 4th Cir.1982). In the instant case neither remedy was employed. Therefore, we shall review the matter as in any other case where the record contains no reasons for judgment.

II.
Yuma asserts the Commissioner erred in failing to hold a hearing. The record indicates Yuma made three separate requests to the Commissioner for a hearing. Yuma requested a public hearing to allocate responsibility for the remediation costs among the prior lease holders. The Commissioner responded that he doubted his authority to look past the operator of record, in this case Yuma, for remediation costs, relying on the "Oilfield Site Remediation Act," an apparent reference to the Louisiana Oilfield Site Restoration Law, La. R.S. 30:80 et seq. Correspondence between Yuma and the Commissioner particularized the issues and factual determinations of concern to Yuma, including whether a production pit located on the oilfield site was properly closed, whether the site was "abandoned", whether the site was "unusable", whether the site was "orphaned", and who should be designated "financially responsible".
A public hearing was set for February 17, 1994; however, a stipulation was entered into between Yuma and the Commissioner, and thereafter, the Commissioner issued Order No. 170-6. In addition, the record contains a letter from the Commissioner to counsel for Yuma, recognizing Yuma's "right to a hearing" and suggesting that a conclusion in the form of a final order for judicial review be issued if "Yuma determines that such would be expedient." Although the record does not include a formal cancellation of the scheduled hearing, Yuma, in its petition for judicial review of the Commissioner's order, states:
By conference call between representatives of the Office of Conservation [and] Yuma ... it was agreed that the February 17, 1994 hearing would be continued indefinitely and that Yuma and the Office of Conservation would enter into a stipulation to serve as the basis for an order by the Commissioner which would permit judicial review....
Yuma now complains that the failure to hold a hearing was error. We are inclined to hold that a party that asserts in its petition that it agreed to continue a hearing should not be heard to complain of a procedure to which it acquiesced. In spite of the failure of the Commissioner to hold a public hearing, the record before us adequately presents the issues for our review.

III.
Yuma argues the Commissioner erred in finding it to be the "owner" of the oilfield site. Yuma asserts the Commissioner ignored the applicable statute and erred in its interpretation of "owner" as defined in La. R.S. 30:3(8).
In considering the case before us, we must address the proper standard of judicial review of a decision of the Commissioner. Judicial review of the Commissioner's orders herein was sought in the district court pursuant to La. R.S. 30:12. La. R.S. 30:12 grants the district court the authority to reverse or modify the decision of the Commissioner if substantial rights of the appellants are prejudiced because the Commissioner's findings or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record. La. R.S. 30:12 B(5).
The manifest error standard of review is used in reviewing the facts found by the Commissioner, as opposed to the arbitrariness *828 test used in reviewing conclusions and exercises of agency discretion. Tex/Con Oil and Gas Company v. Batchelor, 634 So.2d 902, 907 (La.App. 1st Cir.1993), writ denied, 94-0270 (La.3/18/94), 635 So.2d 1102. However, questions of law are to be reviewed with little or no deference to the decision of the administrative body. Id.
Prior to its amendment in 1993, La. R.S. 30:3(8) provided:
"Owner" means the person who has the right to drill into and to produce from a pool and to appropriate the production either for himself or for others.
This definition was amended by La.Acts 1993, No. 113, and now provides: "`Owner' means the person, including operators and producers acting on behalf of the person, who has or had the right to drill...." This amendment expands the definition of owner and now includes former operators and producers and provides that previous lease holders are to be considered as owners.
The Commissioner is empowered by statute with jurisdiction and authority over all persons and property in controversies involving conservation of oil and gas resources. La. R.S. 30:4 A. His authority extends to identifying the ownership of all surface and storage waste facilities incidental to oil and gas exploration and production. La. R.S. 30:4 C(16)(a). "Owner" as defined by La. R.S. 30:3(8) includes former lease holders.
The Commissioner prejudiced substantial rights of Yuma, and he erred as a matter of law by failing to determine and designate former lease holders as "owners" as defined by statute. Therefore, we reverse the order of the Commissioner designating only Yuma Petroleum Company as the owner of the subject lease.
We cannot determine from the record the identification of former lease holders or the allotment of an obligation, if any, for remediation between former owners as requested by Yuma. Therefore, we remand this matter to the Commissioner to hold a hearing for those purposes and to make those determinations. Costs of this appeal, in the amount of $1,014.92 are assessed against the Commissioner.
REVERSED AND REMANDED.
PARRO, J., dissents with reasons.
PARRO, Judge, dissenting.
Although I agree the Commissioner of Conservation ("Commissioner") is empowered by LSA-R.S. 30:4(A) with jurisdiction and authority over all persons and property necessary to effectively enforce the provisions of law relating to the conservation of oil and gas, I do not agree that the Commissioner erred as a matter of law by failing to determine and designate all persons that qualify as "owners" as defined by LSA-R.S. 30:3(8).
LSA-R.S. 30:4(C)(1)(b) and (16)(a) provide:
Only an owner as defined in R.S. 30:3(8) shall be held or deemed responsible for the performance of any actions required by the commissioner. (Emphasis added.)
These provisions seemingly authorize the Commissioner to hold "an" owner responsible even though there may in fact be more than one person or entity that qualifies as an owner. Although the statutory scheme empowers the Commissioner with jurisdiction and authority over "all" owners, it does not mandate that the Commissioner identify more than one or all owners or that the Commissioner allocate the responsibility for site remediation between such owners when requested to do so by a party to the conservation proceeding. Since the statutory scheme does not require that "all" owners be joined in the proceeding, I believe that the Commissioner's office is not an appropriate forum for the adjudication of the complex issue of which persons are to be considered an owner. The judicial branch, rather than the executive branch, of government is a more appropriate forum for determining this issue. Such cases may involve contractual obligations that give rise to many legal issues that the court system would be better equipped to handle.
Thus, the Commissioner was acting within his discretion in designating only Yuma Petroleum Company ("Yuma") as an owner subject to the compliance order and refusing to *829 determine other possible owners' responsibility to Yuma for site restoration and remediation costs. Under these circumstances, Yuma's recourse against other owners lies in the judicial system. For these reasons, I would affirm the judgment of the trial court, which upheld the Commissioner's ruling that Yuma was an owner and was responsible for site remediation. Accordingly, I respectfully dissent.